07-3003-cr
United States v. Stewart

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: June 24, 2008                                      Decided: January 8, 2009)

Docket No. 07-3003-cr

UNITED STATES OF AMERICA,

*Appellant*,

v.

BRETT STEWART,

*Defendant-Appellee.*

Before: WINTER, MINER, and CABRANES, *Circuit Judges.*

Appeal from an order of the United States District Court for the Southern District of New

York (Alvin K. Hellerstein, *Judge*) granting defendant's motion to suppress evidence seized pursuant to

a traffic stop. The District Court held that, for a traffic stop to withstand scrutiny under the Fourth

Amendment, a law enforcement officer must have (a) probable cause to believe that a traffic violation

occurred or (b) reasonable suspicion that "criminal activity," defined to exclude traffic violations, "may

be afoot." The District Court erred because reasonable suspicion of a traffic violation provides a

sufficient basis under the Fourth Amendment to make a traffic stop.

Vacated and Remanded.

> DAVID A. O'NEIL, Assistant United States Attorney (Michael J.
> Garcia, United States Attorney, *on the brief*, Katherine
> Polk Failla, Assistant United States Attorney, *of counsel*),
> United States Attorney's Office for the Southern District

of New York, New York, NY, *for Appellant United States of America.*

EDWARD S. ZAS, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellee Brett Stewart.*

JOSÉ A. CABRANES, *Circuit Judge*:

The government appeals from a June 13, 2007 order of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) granting defendant-appellee Brett Stewart's motion to suppress evidence from his trial for violating 18 U.S.C. § 922(g), which prohibits a felon from possessing a firearm. *See United States v. Stewart*, 491 F. Supp. 2d 423, 430 (S.D.N.Y. 2007). This appeal requires us to determine whether the District Court erred by suppressing evidence seized by the police pursuant to a traffic stop because (a) the police lacked probable cause to believe that a traffic violation had occurred or, in the alternative, (b) lacked reasonable suspicion that "criminal activity may be afoot" because traffic violations are not "criminal activity." As set forth more fully below, we conclude that the District Court erred because reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop.

## BACKGROUND[1]

In the early morning of August 29, 2006, Brett Stewart rode as a passenger in a livery cab[2] driven by Wilfredo Jimenez, bound for a destination in the Bronx. At the intersection of 165th Street and Brook Avenue, the livery cab stopped at a red light. From the opposite direction, two officers of the New York City Police Department ("NYPD"), Robert Regnier and Angel Torres, approached the intersection in an unmarked sedan. The officers testified that, as they crossed the intersection, they saw

---

[1] The facts described in this section either are undisputed or were found by the District Court after an evidentiary hearing held on March 28, 2007. *See United States v. Stewart*, 491 F. Supp. 2d 423, 425 (S.D.N.Y. 2007).

[2] The District Court's Opinion and Order refers to the livery cab as a "taxicab." *See Stewart*, 491 F. Supp. 2d at 425.

the livery cab's front wheels unlawfully encroaching on the crosswalk. *See* N.Y. Veh. & Traf. Law § 1172(a) ("[E]very driver of a vehicle approaching a stop sign . . . shall stop before entering the crosswalk on the near side of the intersection."). In response, Regnier and Torres made a "u-turn," pulled up behind the cab, turned on their police lights, and ordered the cab to pull over. The officers approached the car, and Torres asked Jimenez whether "everything was alright." *Stewart*, 491 F. Supp. 2d at 425-26. Regnier, meanwhile, walked to the back of the cab, where Stewart was sitting, and asked to see Stewart's hands. Stewart complied at first, putting both hands on his lap, but then he hid his right hand behind his right buttock. Regnier then ordered Stewart out of the car, and Stewart exited, but once outside the car, he turned his body such that his right side was shielded from Regnier's view. *Id.* at 426. Regnier responded by instructing Stewart to place his hands on the trunk of the livery cab. When Stewart failed to comply promptly, Regnier seized Stewart, turned him around, and forced his hands on the trunk of the cab. Stewart responded, according to the police officers: "Take it easy, officer; I only have a little thirty-eight." *Id.* Regnier recovered a ".25 caliber Raven Arms semiautomatic handgun" from Stewart's right rear pocket and arrested him. *Id.*

Stewart was charged with possession of a firearm after a prior conviction of a crime punishable by a term of imprisonment that exceeds one year, in violation of 18 U.S.C. § 922(g). He moved to suppress the evidence against him on Fourth Amendment grounds, and on March 28, 2007, the District Court held an evidentiary hearing, after which it granted Stewart's motion. On the question of whether the livery cab encroached on the crosswalk, the District Court found Jimenez's testimony more persuasive than that of the police officers:

> While Torres and Regnier both testified that they observed that the front wheels and front portion of the taxicab were on or over the crosswalk line(s) and, therefore, in the intersection as they passed through in the patrol car, Jimenez insisted that he had come to a full and complete stop before the intersection, and that the wheels and front end of his vehicle had not passed the lines of the crosswalk. Jimenez testified that he knew this because he had noticed the red light

3

from a distance as he approached, and that he had decelerated well before arriving at the intersection.

Both officers testified that their focus was upon Stewart, seated in the rear right corner of the vehicle, the seat furthest from both the taxicab's front left wheel and the officers' vantage point as they drove through the intersection and the red light. The officers testified also that they did not observe the traffic infraction until they were at least midway through the intersection and observing the vehicle from a "close [] . . . side angle." In light of this testimony, and taking notice of the fact that a stationary object may shift in one's visual perception as one moves past it—that an object abutting a straight line may appear to be over that line as an observer moves past and away from that line—[the District Court] find[s] Jimenez's testimony regarding the location of his vehicle in relation to the line to be more credible. Mr. Jimenez had been driving a taxicab for close to a decade, had no criminal record, and had never been arrested. He gave a calm, clear, and consistent account of the events of the early morning hours of August 29, 2006, and his testimony was persuasive. [The Court] find[s], for the purposes of Stewart's suppression motion, that Jimenez did not violate Section 1172(a) of New York Vehicle and Traffic Law.

*Id.* at 426-27 (internal citations omitted) (first alteration in original). While the District Court found Jimenez's testimony on this issue more persuasive than that of the officers, it did not dismiss the officers' testimony as false. Instead, the District Court concluded that an optical illusion or distraction may have caused the officers to believe that they had seen the livery cab's wheels enter the crosswalk. The District Court also stated that "[w]ith respect to the remainder of the relevant facts, [it] accept[s] the accounts of the police officers." *Id.* at 427.

Having determined that the cab did not encroach on the crosswalk, the District Court explained that the traffic stop would nevertheless be valid if: (1) the police had probable cause to believe that the livery cab violated New York's motor vehicle code, or (2) the police had a reasonable suspicion that "criminal activity may be afoot." *Id.* at 428. In the District Court's view, neither was the case.

First, the District Court held that the police lacked probable cause for the traffic stop "[i]n light of the relative movements of the two vehicles, the focus of attention by the police officers on the passenger in the rear seat, and the fact that the officers did not detect an incursion into the intersection until they were even with the stopped taxicab and passing by it." *Id.* From the District Court's

4

perspective, "an objectively reasonable police officer would not have believed that the taxicab violated New York's motor vehicle code" based on the fleeting observations made by the officers here. *Id.*

Second, the District Court concluded that "the officers could not have had a reasonable suspicion that 'criminal activity may be afoot,'" *id.* at 428, because "a traffic violation for infringing on an intersection does not qualify as 'criminal activity,'" *id.* at 429. In support of its determination that traffic violations fall outside the scope of "criminal activity," the District Court referred to the practice commentaries for section 225 of the New York Vehicle and Traffic Law, which state that the prosecution of a traffic infraction is performed administratively, under a "clear and convincing" standard of proof, and remedied by monetary penalties only. *See id.* at 429.[3]

Accordingly, the District Court held that the stop violated Stewart's right to be free of unreasonable searches and seizures under the Fourth Amendment, and it granted Stewart's motion to suppress evidence obtained from the search. The government then appealed the order that granted Stewart's suppression motion, arguing that the District Court applied the wrong legal standard to determine the validity of the traffic stop.

## DISCUSSION

When considering a challenge to the resolution of a suppression motion, we review findings of fact for clear error and legal questions *de novo*. *See, e.g.*, *United States v. Jenkins*, 452 F.3d 207, 211-12 (2d Cir. 2006). For the reasons that follow, we conclude that the District Court applied the wrong legal

---

[3] The District Court further concluded that Stewart's behavior in the back seat of the cab—"watching . . . closely as the[ ] unmarked police car . . . drove through a red light and past the taxicab," *Stewart*, 491 F. Supp. 2d at 429—did not create a reasonable suspicion of criminal activity under the circumstances. According to the District Court, "[t]hat . . . is normal behavior for anyone in a stopped car at 3 a.m. in a crime-filled area. And, even if Stewart's interest in the officers was somewhat suspicious, this alone falls short of the particularized and objective basis, taking into account the totality of the circumstances, required to satisfy the reasonable suspicion standard." *Id.* (internal quotation marks omitted).

standard to determine the permissibility under the Fourth Amendment of searches conducted pursuant to traffic stops.

As noted, the District Court held that a traffic stop comports with the Fourth Amendment so long as (1) police officers have probable cause to believe that a traffic violation occurred, or (2) police officers have a reasonable suspicion of criminal activity, but mere traffic violations do not constitute criminal activity. *See Stewart*, 491 F. Supp. 2d at 428-29. This holding is in tension with—if not directly contradictory to—our precedents. We have held repeatedly that a traffic stop based on a reasonable suspicion of a traffic violation comports with the Fourth Amendment. In *United States v. Jenkins*, for example, we perceived "no error in the District Court's determination that the initial basis for the stop of the SUV was valid because the officers reasonably believed that the SUV lacked license plates, which would have been a violation of VTL § 402(1)(a)." 452 F.3d at 212; *see also id.* ("[B]ecause the officers had a reasonable but mistaken belief that the SUV lacked license plates, stopping the vehicle was 'justified at its inception.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968))). Similarly, in *Holeman v. City of New London*, we explained that "[t]he Fourth Amendment requires that an officer making [a traffic] stop have probable cause *or reasonable suspicion* that the person stopped has committed *a traffic violation* or is otherwise engaged in or about to be engaged in criminal activity." 425 F.3d 184, 189 (2d Cir. 2005) (emphasis added).

The majority of our sister circuits have also found no Fourth Amendment violation arising from a traffic stop supported by a reasonable suspicion that a traffic violation has occurred. *See, e.g.*, *United States v. Southerland*, 486 F.3d 1355, 1358-59 (D.C. Cir. 2007) ("Whether a stop is reasonable turns on whether the facts viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion that a traffic violation has occurred. The police may initiate a stop even if the traffic violation is a minor one." (internal citation and quotation marks omitted)); *United States v.*

6

*Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) ("[T]he *Terry* reasonable suspicion standard applies to routine traffic stops."); *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) ("For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."); *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("The determinative question is not whether [defendant] actually violated the Motor Vehicle Code by operating a vehicle with one defective brake light, but whether an objectively reasonable police officer could have formed a reasonable suspicion that [defendant] was committing a code violation.");[4] *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) ("[T]he Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops.").

In support of the proposition that "reasonable suspicion is not enough; rather, probable cause is necessary to stop a car for an alleged traffic infraction that is minor, commonplace, and not a crime," Stewart relies heavily on *Whren v. United States*, 517 U.S. 806 (1996). Appellee's Br. 13-14, 15, 19-26. In *Whren*, the Supreme Court observed that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810. We see nothing in this observation that contradicts the holding of this Court—and the overwhelming majority of our sister circuits—that traffic stops are reasonable when they arise from the reasonable suspicion of a traffic violation. The *Whren* Court did not state that a decision to stop an

---

[4] Curiously, the District Court relied on this decision of the Eighth Circuit, as well as *United States v. Smart*, 393 F.3d 767 (8th Cir. 2005), for the proposition that, with respect to traffic stops, the Fourth Amendment requires probable cause to believe—and not mere reasonable suspicion—that a traffic violation has occurred. *See Stewart*, 491 F. Supp. 2d at 428. These Eighth Circuit decisions make clear, however, that either probable cause or reasonable suspicion of a traffic violation is sufficient to satisfy the Fourth Amendment's requirement of reasonableness. *See, e.g.*, *Smart*, 393 F.3d at 770 ("[The police officer] had an objectively reasonable basis to stop [defendant's] vehicle if he *reasonably suspected* that [defendant] was operating a vehicle that did not comply with *Iowa traffic laws*." (emphases added)). Yet more remarkable is the decision of the District Court to look to the precedents of the Eighth Circuit for resolution of a legal question addressed by this Court on more than one occasion within the last four years.

automobile is reasonable *only* when the police have probable cause to believe that a traffic violation has occurred. The Court noted instead that probable cause was *sufficient* to render the stop reasonable. Whether reasonable suspicion would also permit the stop to satisfy the Fourth Amendment's requirement of reasonableness was not addressed by the Court. Accordingly, we identify nothing in *Whren* that casts doubt on our understanding that *either* probable cause *or* reasonable suspicion of a traffic violation can support a traffic stop.

Stewart also points to a recent decision of the Sixth Circuit, recognizing that "[w]hether the police may stop a vehicle based on mere reasonable suspicion of a civil traffic violation is the subject of a conflict in our case law." *United States v. Blair*, 524 F.3d 740, 748 n.2 (6th Cir. 2008). The Sixth Circuit did not, however, seize the opportunity in *Blair* to resolve that conflict. *See id.* ("Because we dispose of this case on other grounds, . . . . we will not resolve the discrepancy between the probable cause and reasonable suspicion standards at this time."). It is true that the jurisprudence of the Sixth Circuit in this area is unsettled, and it might be that, in the Sixth Circuit, an investigatory stop for a traffic violation can be justified only by probable cause. *See United States v. Simpson*, 520 F.3d 531, 539 (6th Cir. 2008). But at least one panel of the Sixth Circuit has recently recognized that (1) "virtually every other circuit court of appeals has held that reasonable suspicion suffices to justify an investigatory stop for a traffic violation," *id.* at 540; (2) the majority position "appear[s] consistent with the Supreme Court's statement that a routine traffic stop is a relatively brief encounter and is more analogous to a so-called *Terry* stop than to a formal arrest," *id.* (internal quotation marks omitted); and (3), in light of the "overwhelming precedent" to the contrary, the "correctness" of the Sixth Circuit's position is in "grave doubt[ ]," *id.* For these reasons, we are not persuaded that the position of the Sixth Circuit, insofar as it has one, offers a better standard than the one adopted by the majority of circuits—including our own.

8

Finally, Stewart asks this Court to consider an unpublished opinion of the Eleventh Circuit stating, without elaboration, that "an automobile stop is reasonable and constitutional . . . if it is based on either probable cause to believe that a traffic violation has occurred or reasonable suspicion that a crime has been or will be committed." *United States v. Allen*, 274 F. App'x 811, 817-18 (11th Cir. 2008) (unpublished). In that case, the Eleventh Circuit concluded that the police officers had reasonable suspicion to believe that the defendant was driving a car without a license, a crime under applicable law, and it therefore concluded that the traffic stop did not violate the Fourth Amendment. *Id.* at 818. The Eleventh Circuit did not reach—or discuss in any detail whatsoever—whether reasonable suspicion of a traffic violation would support the stop. Accordingly, there is no reasoning in this unpublished opinion[5] that counsels in favor of adopting a strict probable cause standard for traffic stops arising from traffic violations.

We therefore hold that the District Court erred by requiring the police officers in this case to justify their traffic stop by demonstrating either probable cause to believe that a traffic violation had occurred or reasonable suspicion of a crime more serious than a traffic violation. Insofar as our previous rejection of this standard might have been ambiguous, we now hold unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop.

On remand, the District Court shall determine whether Officers Regnier and Torres had a reasonable suspicion that the livery cab driven by Jimenez committed a traffic violation. In connection with this inquiry, we note that a mistake of fact does not undermine the existence of reasonable suspicion. *See Jenkins*, 452 F.3d at 212 ("The constitutional validity of a stop is not undermined simply

---

[5] Pursuant to Local Rule 36-2 of the U.S. Court of Appeals for the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

9

because the officers who made the stop were mistaken about relevant facts."). From whatever final decision the District Court makes on this remand, the jurisdiction of this Court to consider a subsequent appeal—on the issue of the suppression of evidence obtained during the traffic stop—may be invoked by any party by notification to the Clerk of Court within ten days of the District Court's decision, *see United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), in which event the renewed appeal will be assigned to this panel.

## CONCLUSION

The June 13, 2007 order of the District Court is **VACATED** and the cause is **REMANDED** for further proceedings consistent with this opinion.