NOT DESIGNATED FOR PUBLICATION

No. 112,983

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ADRIAN HOLLISTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Brown District Court; JOHN L. WEINGART, judge. Opinion filed January 15, 2016.
Reversed in part, vacated in part, and remanded with directions

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Kevin M. Hill*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

*Per Curiam*:  Adrian Hollister appeals from his convictions for possession of
marijuana and possession of drug paraphernalia following a bench trial on stipulated
facts. Hollister argues that the district court failed to effectuate a valid waiver of his right
to a jury trial, erred in denying his pretrial motion to suppress, and improperly enhanced
his sentence based on his criminal history. For the reasons stated below, we find (1) the
district court failed to adequately inform Hollister of his right to a jury trial or otherwise
elicit a waiver of this right on the record, (2) the district court did not err in denying
Hollister's motion to suppress, and (3) the issue regarding use of Hollister's criminal

1

history in sentencing is moot in light of our decision to reverse Hollister's convictions with directions for further proceedings.

FACTS

On December 24, 2013, Brown County Sheriff's Office Deputy Kraig Pyle received a call from dispatch about a potentially suicidal person travelling in a vehicle through the small town of Robinson, Kansas. At approximately midnight, the deputy observed what would be later identified as Hollister's vehicle pass his patrol car on Raccoon Road in Robinson without a visible license tag. As the deputy turned the patrol car around, Hollister sped up. Although the deputy turned his overhead lights on to make a traffic stop, Hollister made an abrupt turn and began to distance himself from the deputy. The deputy believed Hollister was attempting to get out of the deputy's sight. Hollister eventually proceeded to back into a parking spot, and the deputy stopped his vehicle in front of Hollister's parked vehicle.

As the deputy approached the vehicle, Hollister exited his vehicle and quickly closed the door. As Hollister closed the car door, the deputy smelled the odor of burnt marijuana. The deputy explained to Hollister that he had pulled Hollister over because he was unable to see a visible license tag on Hollister's vehicle. Hollister pointed to a temporary license tag in the rear window of the car. The deputy then asked Hollister about the smell of burnt marijuana. Hollister initially denied having smoked any marijuana. The deputy then asked Hollister to produce his vehicle registration and other documentation. When Hollister opened the passenger door to retrieve the documents, the deputy again detected the smell of burnt marijuana. The deputy then asked Hollister additional questions regarding the smell of burnt marijuana coming from the vehicle and asked Hollister to "level" with him. In response, Hollister admitted he had been smoking marijuana and told the deputy that the "roach" was located in the ashtray inside the car.

2

The deputy searched the vehicle and found the roach and a cigarillo package, which he believed Hollister used to prepare a marijuana "blunt."

Hollister's attorney filed a motion to suppress the evidence collected after the deputy stopped Hollister's vehicle. A hearing on the motion was held on May 27, 2014. After the close of evidence, the district court concluded that the deputy was legally permitted to stop Hollister based on the deputy's testimony that he was unable to see a visible license tag on Hollister's vehicle, which, if true, would be a traffic violation. The district court then denied Hollister's motion to suppress.

On June 3, 2014, the parties appeared before the district court for a bench trial "by agreement of the parties." The district court judge noted that the case had initially been scheduled for a jury trial but explained:

> "My understanding is, according to representations made to me off the record, is that [Hollister] would like to resolve this matter, but would like to preserve his right to appeal, and he would like to appeal the issue of the suppression. And the only way to do that would be to have a stipulation of evidence and adjudication of guilt by the Court, based on the evidence, and then proceed to the appeal after sentencing."

Defense counsel agreed with the district court's factual recitation and renewed Hollister's motion to suppress on the record, which the court denied. The court then found Hollister guilty of both charges based on stipulated facts, including the evidence presented at the suppression hearing. The court sentenced Hollister to an underlying 13-month prison term and placed him on probation for 12 months.

ANALYSIS

1. *Right to trial by jury*

Hollister argues the district court violated his constitutional right to a jury trial by failing to effectuate a valid waiver of his jury trial rights on the record. The State concedes the record's deficiency in this respect.

Hollister has asserted the inadequacy of his jury trial waiver for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). While Hollister acknowledges he failed to raise this issue at the district court level, he correctly argues that this court may reach the issue in order to prevent the denial of his fundamental right to a jury trial. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (setting forth exceptions to general rule that new legal theory may not be asserted for first time on appeal, including that consideration of theory is necessary to prevent denial of fundamental rights).

A jury trial unquestionably entails a fundamental right secured to criminal defendants in the Sixth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. See *State v. Parker*, 301 Kan. 556, 563, 344 P.3d 363 (2015); *State v. Beaman*, 295 Kan. 853, 856-58, 286 P.3d 876 (2012). The *Beaman* court recognized that given the importance of the right to trial by jury, a criminal defendant can question the sufficiency of his or her waiver for the first time on appeal. 295 Kan. at 857-58. The rationale for application of this exception is sound as the decision to waive the right to a jury trial rests with a defendant personally acting with the advice of counsel. See *Taylor v. Illinois*, 484 U.S. 400, 417-18 n.24, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988); *State v. Irving*, 216 Kan. 588, 590, 533 P.2d 1225 (1975). A criminal defendant, unschooled in the law, is hardly in a position to recognize an inadequate

waiver and call this deficiency to the attention of the district court. *State v. Frye*, 294 Kan. 364, 370-71, 277 P.3d 1091 (2012). As the court recognized in *Frye*, the duty to inform a criminal defendant of his or her right to a jury trial in conjunction with waiver of that right "rests squarely with the [district court] judge." 294 Kan. at 371. The failure of the prosecutor or defense counsel to identify a deficient waiver does not relieve the district court of this duty to the defendant.

As with any other waiver, a criminal defendant's relinquishment of the right to a jury trial must be made knowingly and intelligently. *Irving*, 216 Kan. at 589-90. The *Irving* court held that a district court must inform the defendant personally of his or her constitutional right to a jury trial. Without that information, the defendant cannot then properly waive the right. 216 Kan. at 589-90. Stated another way, "for a criminal defendant to effectively waive his [or her] right to a trial by jury, the defendant must first be advised by the court of his [or her] right to a jury trial, and he [or she] must personally waive this right in writing or in open court for the record." 216 Kan. at 590. This rule set forth in *Irving* remains the essential measure for a sufficient waiver. See *Beaman*, 295 Kan. at 858-59. A defendant's right to waive a jury trial in a felony case has been codified in K.S.A. 22-3403(1) and requires the consent of the State and the district court.

Out of deference to the fundamental significance of the right to a jury trial, an appellate court must strictly construe an ostensible waiver to protect against an inadvertent or uninformed relinquishment. *Beaman*, 295 Kan. at 858; *Irving*, 216 Kan. at 589. Considered in light of the standards outlined above, we find the district court's brief discussion prior to Hollister's bench trial was inadequate to adequately advise Hollister of his right to a jury trial and the waiver thereof. While the record reflects Hollister wanted to have his case resolved by a bench trial through a stipulation of facts, the district court did not speak to Hollister about his right to a jury trial in any fashion or otherwise attempt to secure a waiver from him. A waiver will not be presumed from a silent record. *Irving*, 216 Kan. at 589. Appellate caselaw requires at least a brief discussion between the

5

district court and the defendant in which the district court informs the defendant he or she has a right to a jury trial and then asks the defendant directly if he or she is giving up that right. See, *e.g.*, *Beaman*, 295 Kan. at 858-59; *Frye*, 294 Kan. at 373-74; *Irving*, 216 Kan. at 589-90. Because no such discussion occurred here, Hollister did not adequately waive his right to a jury trial.

As a result, we must reverse Hollister's convictions, vacate his sentences, and remand the case for further proceedings. On remand, the district court should inform Hollister of his right to a jury trial. Hollister may then choose to exercise that right or make an informed waiver of it. If Hollister were to waive his right to a jury trial, the parties and the district court may determine the question of whether he would be entitled to a new trial or bound to the record in the earlier bench trial.

2. *Motion to suppress*

Because there is a possibility that the suppression issue may arise again in proceedings after remand, we will address the merits of Hollister's claim that the district court erred in denying his motion to suppress.

When reviewing a district court's denial of a motion to suppress, appellate courts utilize a bifurcated standard. Appellate courts review district courts' factual findings to determine whether they are supported by substantial competent evidence. In making this determination, appellate courts do not reweigh evidence or assess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Substantial competent evidence "is that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can be reasonably resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009). The ultimate legal conclusions drawn from the application of the law to the facts are reviewed de novo. *Reiss*, 299 Kan. at 296.

A traffic stop on a public roadway is a seizure prohibited by the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights unless the officer has reasonable suspicion—supported by specific, articulable facts—that a crime has been, is being, or is about to be committed. K.S.A. 22-2402(1) (codifying *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]); *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

Hollister does not take issue with the district court's conclusion that the initial stop of his car was lawful, and a review of the record supports the court's finding that the deputy observed that Hollister failed to properly display a license tag. This provided the deputy with reasonable suspicion to believe a traffic infraction was being committed. Instead, Hollister argues that the stop became an unlawful detention once the deputy verified that Hollister had a valid temporary tag and, thus, any evidence obtained after such verification is subject to suppression. For the reasons stated below, we are not persuaded by Hollister's argument.

When analyzing whether an officer's actions have exceeded the scope or duration of the stop, courts consider "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *State v. Kirby*, 12 Kan. App. 2d 346, 355, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988) (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 [1985]).

We begin our discussion with *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), a case with facts similar, but distinguishable, to the ones presented here. There, a Utah state trooper stopped the defendant's vehicle because the trooper could not read the expiration date on the temporary registration sticker posted in the window. However, as the trooper approached the vehicle, he determined the sticker was valid and had not expired. Nevertheless, and after commenting briefly on the sticker, the trooper requested

7

and received the driver's identification and registration and questioned the defendant and his passenger about their travel plans. The trooper then returned to his patrol car and ran a criminal history check. From this check, the trooper learned the defendant had a suspended driver's license and prior convictions for assault and drug and gun violations. Based on what he had learned, the trooper then returned to the vehicle and asked the driver another question about his travel plans and whether the defendant and his passenger "were 'packing' any alcohol, firearms or drugs." 29 F.3d at 560. Although the defendant responded negatively, the trooper obtained consent to search and ultimately discovered drugs, drug paraphernalia, and a gun.

On appeal, the defendant conceded the initial stop was justified but argued it evolved into an illegal detention after the trooper had dispelled his suspicion regarding the temporary sticker. The Tenth Circuit Court of Appeals agreed, reasoning that the sole purpose of the stop was to ensure the validity of the temporary sticker, and that purpose was fulfilled when the trooper approached the vehicle and observed that the sticker was valid. 29 F.3d at 561. Thus, the trooper's further questioning of the defendant about his vehicle and travel plans, as well as the trooper's request for the defendant's license and registration, exceeded the scope of the stop's underlying justification. The *McSwain* court specifically recognized that an officer conducting a routine traffic stop is permitted to ask about identity and travel plans, and to request a driver's license and vehicle registration, run a computer check, and issue a citation. 29 F.3d at 561. However, the court ultimately found such cases inapposite as they involved situations "in which the officer, at the time he or she asks the questions or requests the driver's license and registration, still has some 'objectively reasonable articulable suspicion' that a traffic violation 'has occurred or is occurring.'" 29 F.3d at 561.

Significant to our analysis here, the court in *McSwain* rejected the State's suggestion that the court's holding would "require the officer to 'stop a vehicle, approach the vehicle on foot, observe it, then walk away, . . . leaving the stopped citizen to wonder

what had just occurred.'" 29 F.3d at 562. The court pointed out that its ruling would not prevent an officer in this situation from explaining the reason for the initial detention and then allowing the driver to continue on his or her way without asking for a license and registration and without asking about travel plans. 29 F.3d at 562.

The Tenth Circuit was presented with factual circumstances similar to *McSwain* in the more recent case of *United States v. Edgerton*, 438 F.3d 1043 (10th Cir. 2006). There, a Kansas highway patrol trooper stopped the defendant's vehicle at night because he could not read the state of origin or tag number on the vehicle's temporary registration tag. The trooper believed the defendant had failed to display a "clearly visible" tag in violation of K.S.A. 8-133. 438 F.3d at 1045-46. However, when the trooper approached the vehicle, he could see that the temporary tag was issued by the state of Colorado and appeared to be valid. Nevertheless, the trooper approached the defendant, asked for license and registration, and returned to his patrol car to prepare a warning ticket. When the trooper returned the defendant's license and registration and handed her the warning ticket, he obtained consent to search the vehicle's trunk and ultimately discovered over 20 kilograms of cocaine. The *Edgerton* court concluded the initial stop was valid but found the defendant was unlawfully detained after the trooper determined she had a valid and properly displayed temporary tag. As such, the court reversed the district court's decision to deny the defendant's motion to suppress, finding that the reasons for the stop dissipated after the trooper was able to read the tag. 438 F.3d at 1051. After its holding, the *Edgerton* court observed, albeit in dicta, that when the reason for the stop dissipates:

> "*McSwain* instructs us for better or worse that Trooper Dean, as a matter of courtesy,
> should have explained to Defendant the reason for the initial stop and then allowed her to
> continue on her way without requiring her to produce her license and registration. See
> *McSwain*, 29 F.3d at 562. Of course, we do not discount the possibility in similar
> circumstances that the brief encounter between an officer and driver authorized by
> *McSwain* might independently give rise to facts creating reasonable suspicion of criminal
> activity, thus warranting further investigation. For instance, at the commencement of his

9

encounter with Defendant in this case, Trooper Dean noted Defendant's nervousness, an air freshener hanging from the rear console, and 'energy drinks' inside the vehicle. The district court, however, made no finding in this case that the facts which Trooper Dean observed independently gave rise to reasonable suspicion and the Government makes no such argument on appeal. See *United States v. Cervini*, 379 F.3d 987, 994 n.5 (10th Cir. 2004) (noting arguments not raised may be deemed waived). We therefore end our analysis here." 438 F.3d at 1051.

Although the facts are distinguishable, a panel of this court applied the reasoning of *McSwain* and *Edgerton* in *State v. Diaz-Ruiz*, 42 Kan. App. 2d 325, 331-33, 211 P.3d 836 (2009). In that case, an officer stopped the defendants because the officer was concerned that a ladder was not secured on the defendants' truck. Once the defendants were pulled over, the officer checked the ladder, finding that it was properly secured. Nevertheless, the officer continued with the stop and received permission to search the truck where the officer found 300 pounds of marijuana. Our court held that "because the trooper's reasonable suspicion evaporated once he observed that the ladder was secure, the trooper had no reason to detain the defendants to perform the tasks incident to an ordinary traffic stop. Thus, the trooper unlawfully extended the scope of the stop by questioning the defendants regarding their travel plans and requesting identification." 42 Kan. App. 2d at 337. The court went on to say, however, that

> "as the Tenth Circuit noted in *McSwain*, when an officer dispels the reasons for the stop before approaching the driver, he [or she] need not simply leave the scene with no further action, as the State suggests here. Rather, the officer can and should approach the driver of the vehicle to briefly explain the reason for the stop and to explain that the reason was dispelled with further investigation." 42 Kan. App. 2d at 337.

In sum, then, the courts in *McSwain*, *Edgerton*, and *Diaz-Ruiz* generally held that officers unlawfully extended the scope of each of the stops by further questioning the defendants or asking the defendants for consent to a search after the officers' reasonable suspicion dissipated. But each of these courts also noted that after an officer's reasonable

10

suspicion has dissipated, an officer is constitutionally permitted to, and should as a matter of courtesy, explain to a defendant the reason for the initial stop and then allow a defendant to continue on his or her way without asking questions or requiring a defendant to produce a driver's license and registration. See *McSwain*, 29 F.3d at 562.

In a case that has facts more similar to the ones presented in this case, the United States Court of Appeals for the Second Circuit applied the reasoning of *McSwain* to deny a motion to suppress. See *United States v. Jenkins*, 452 F.3d 207 (2d Cir. 2006). In *Jenkins*, two police officers were patrolling an area at night when they observed a sport utility vehicle (SUV) without a front or rear license plate and what appeared to be illegally tinted windows. The police officers stopped the SUV, but when the officers exited their vehicle, they noticed a valid temporary plate affixed to the rear of the car. In spite of this observation, the officers approached the driver of the vehicle. The driver rolled down the window and an odor of marijuana emanated from the car. One of the officers asked who was smoking marijuana, and the driver told the officer he was not smoking it. The officers directed the occupants of the vehicle to exit the SUV. At this point, one of the officers spotted a firearm in the front passenger seat area. Another firearm was also recovered from the backseat. Two of the occupants later admitted owning the firearms. These individuals were arrested, and each was subsequently charged with being a felon in possession of a firearm. Both defendants filed a motion to suppress.

The district court denied the motions to suppress. It first concluded that although the vehicle had a valid temporary plate, because the plate "was hard to see and poorly illuminated, 'an objective police officer would have had a reasonable basis to believe there was a traffic violation'" that warranted a traffic stop. The district court also found unpersuasive the defendants' argument that once the officers observed the temporary plate, they should have "waved the SUV on without further detaining the occupants." Although acknowledging the officers' reasonable suspicion had dissipated when they saw the temporary plate, the district court found it was nonetheless "reasonable for an

11

objective police officer to speak to the driver to tell him he was free to go." Once the officers approached the car, they detected the odor of marijuana, which gave them probable cause to further detain and question the SUV's driver and passengers.

The Second Circuit affirmed the district court's decision to deny the defendants' motions to suppress. First, it concluded that the traffic stop was valid because the officers reasonably believed that the SUV lacked a valid license plate. Second, it held "that when police officers stop a vehicle on a reasonable, albeit erroneous, basis and then realize their mistake, they do not violate the Fourth Amendment merely by approaching the vehicle and apprising the vehicle's occupants of the situation." *Jenkins*, 452 F.3d at 213. Rather, the Second Circuit concluded that the "touchstone of the Fourth Amendment is reasonableness." 452 F.3d at 214. Relying on the dicta cited above from *McSwain*, the court concluded that "it is reasonable for officers who have stopped a vehicle on the basis of a reasonable factual mistake to approach the vehicle and apprise the vehicle's occupants of the situation." 452 F.3d at 214. And once "the officers approached the SUV, they immediately detected an [odor of marijuana, which became an] independent basis for continuing to detain the SUV and its occupants." 452 F.3d at 214.

Turning to the facts here, Hollister argues that the stop became an unlawful detention once the deputy verified that Hollister had a valid temporary tag; thus, any evidence obtained after such verification is subject to suppression. Contrary to Hollister's argument, however, we believe the reasoning of *McSwain, Edgerton*, *Diaz-Ruiz*, and *Jenkins* is persuasive and applicable to Hollister's traffic stop here. As emphasized by the *Jenkins* court, "'[t]he touchstone of the Fourth Amendment is reasonableness.'" 452 F.3d at 214. And it would be unreasonable for an officer who initiates a traffic stop to abruptly terminate the stop without explanation, which would necessarily leave the driver to wonder why he or she was stopped. Drivers should not have to experience feelings of anxiety or uncertainty, even if only momentary, that may result from the absence of such an explanation.

12

The deputy pulled over Hollister's car based on an objectively reasonable, albeit mistaken, suspicion that the car lacked a current license plate. And even if, as Hollister claims, the deputy was able to verify there was a current, temporary tag on the back of Hollister's car before Hollister even got out of the car, we find the deputy did not violate the Fourth Amendment merely by approaching the car to apprise Hollister of the reason for the traffic stop. As predicted by the court in *Edgerton*, the facts in this case establish that during the deputy's brief encounter with Hollister, the deputy smelled the odor of burnt marijuana coming from the car when Hollister opened the door to get out. The odor of burnt marijuana smelled by the deputy during this brief encounter independently gave rise to facts creating reasonable suspicion of criminal activity; *i.e.*, that someone in the car was smoking marijuana. For this reason, we find the district court did not err in denying Hollister's motion to suppress.

3.  *Use of criminal history in sentencing*

In his final claim on appeal, Hollister claims it was error to use his criminal history in determining the type and length of his sentence. Because we are reversing Hollister's convictions with directions for further proceedings, Hollister's claim of error relating to use of his criminal history in sentencing is not ripe for review because it does not present a justiciable controversy. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896, 179 P.3d 366 (2008) (A court will consider neither issues that have become moot nor issues that have yet to ripen into a "fixed and final shape" and, instead, "remain[] nebulous and contingent."). Any decision on this issue would be hypothetical and advisory, an abstract exercise courts typically avoid. 285 Kan. at 896-97.

Convictions reversed, sentences vacated, and case remanded with directions.

\* \* \*

SCHROEDER, J., concurring:  Although I concur with the majority's conclusion, I believe Hollister is entitled to a completely new proceeding. Thus, the issue of how Hollister wants to exercise his rights is for him to decide—whether to proceed with a jury trial, bench trial with presentation of evidence, or a bench trial with the use of stipulations.