06-4897-cv
Williams v. Town of Greenburgh

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: June 23, 2008)                                      Decided: July 22, 2008)

Docket No. 06-4897-cv

CHARLES WILLIAMS,

      *Plaintiff-Appellant*,

      v.

TOWN OF GREENBURGH, and HOPETON WHITE and
WILLIAM BLAND, sued in their individual capacities,

      *Defendants-Appellees*.

Before: MINER and CABRANES, *Circuit Judges*, and BERMAN, *District Judge*.[1]

Appeal from a judgment of the United States District Court for the Southern District of New York (Lisa Margaret Smith, *Magistrate Judge*). We conclude that (1) plaintiff's desire to use the town's community center was not protected by his right to freedom of movement; (2) plaintiff's speech was not silenced or chilled by defendants' allegedly punitive conduct; and (3) probable cause supported the arrest and prosecution of plaintiff for criminal trespass.

Affirmed.

          STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, NY,
          *for Plaintiff-Appellant Charles Williams*.

---

[1] The Honorable Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation.

PAUL E. SVENSSON, Boeggeman, George, Hodges & Corde, P.C., White Plains, NY, *for Defendants-Appellees Town of Greenburgh, Hopeton White, and William Bland.*

JOSÉ A. CABRANES, *Circuit Judge*:

Charles Williams appeals from a judgment of the United States District Court for the Southern District of New York (Lisa Margaret Smith, *Magistrate Judge*)[2] that dismissed, as a matter of law, his claims against the Town of Greenburgh and two municipal officials. On appeal, Williams contends that the District Court erred in awarding judgment to defendants because (1) his desire to use a town community center constituted a liberty interest protected by the Fourteenth Amendment's Due Process Clause, (2) his speech was protected under the First Amendment, and (3) the individual defendants, who alerted police to Williams's potential trespass, were not protected by qualified immunity. We agree that the District Court erred in certain respects, but we nevertheless affirm the judgment of the District Court for the reasons set forth below.

## BACKGROUND

The Town of Greenburgh, New York (the "Town") operates the Theodore D. Young Community Center (the "Center") and employed Williams to work in the Center until June 2002, when he was laid off. On December 27, 2002, Williams—after exercising in the Center—obtained access to a secured locker room in order to use the Center's sauna. Meanwhile, William Bland, the Deputy Commissioner of the Department of Community Resources for the Town, was providing a tour of the Center to two guests; upon entering the secured locker room, they found Williams in the sauna. A confrontation ensued. Although the sequence of events is unclear, the parties agree that Bland told Williams to leave the locker room, and Williams called Bland a "Junior Mussolini" and criticized

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the referral of this action to a magistrate judge for "any or all proceedings."

Bland's "intimidation tactics." Some physical contact between Williams and Bland occurred, but the extent of that contact and the circumstances giving rise to it are in dispute. Bland then called the police, who escorted Williams to the parking lot but did not arrest him. The police warned Williams that if he did not obtain permission before returning to the Center, "he would be subject to arrest."

The next day, December 28, Williams returned to the Center to retrieve a watch that he had left in the locker room. Later that day, he contacted a member of the Center's Advisory Board who, he believed, gave him permission to use the facility. On December 30, 2002, Williams again entered the Center. He saw Bland but said nothing to him, believing that there was no need to explain his return. Bland called the police, who arrested Williams for trespass. In a letter sent to Williams on the same day, Hopeton White, the Commissioner of the Department of Community Resources for the Town, barred Williams from the Center "until further notice" because of his "improper conduct."

Williams was prosecuted for trespass in the Town Court of Greenburgh (Doris T. Friedman, *Greenburgh Town Justice*) and, following a bench trial, was found not guilty on March 21, 2003. The Town Court concluded that on December 30 Williams lacked adequate notice that he was barred from the Center because the oral notice he had received on December 27 lacked "a definitive time." The letter sent on December 30 cured that defect, in the Court's view, because it specified that the ban was "until further notice." Accordingly, the Court found Williams not guilty of trespass but observed that he was "on notice that he [was] barred" from the Center and must obtain permission before returning. Five days later, Commissioner White sent Williams a letter confirming that he was barred from the Center and its "associate grounds" for one year. On March 27, 2003, Williams filed a Notice of Claim against the Town, alleging false arrest, defamation, slander, and malice, which the Town Court subsequently dismissed for failure to prosecute. Prior to the dismissal of that claim, Williams made a written request of the Town Supervisor for permission to use the Center. In response, the Town Board

3

invited Williams to meet with it, but later withdrew that invitation upon learning of Williams's then-pending lawsuit.

Over a year and a half later, Williams asked again about using the Center. His application was granted in November 2005.

The following month, Williams commenced this action pursuant to 42 U.S.C. § 1983 in the District Court. Williams alleged that his expulsion from the Center on December 27, 2002 and subsequent arrest and prosecution for trespass violated (1) the Due Process Clause of the Fourteenth Amendment, (2) his right to free speech under the First Amendment, and (3) his Fourth Amendment right to be free of false arrest and malicious prosecution. On cross-motions for summary judgment, the District Court ruled in favor of defendants and closed the case. *Williams v. Town of Greenburgh*, No. 05 CV 10564 (LMS), dkt. no. 32 (S.D.N.Y. Oct. 12, 2006). This appeal followed.

## DISCUSSION

Williams challenges the District Court's entry of judgment in favor of defendants, arguing that the Court erred in determining that (1) he lacked a liberty interest in gaining admission to the Center, (2) his speech was not protected by the First Amendment, and (3) defendants Bland and White were entitled to qualified immunity. We review *de novo* an award of summary judgment. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007). Although the District Court's reasoning is flawed in certain respects, we nevertheless affirm the District Court's grant of summary judgment for the reasons set forth below.

**A.      Williams's Expulsion from the Center Did Not Interfere with his Right to Freedom of Movement.**

Williams argues that his expulsion from the Center violated his right under the Fourteenth Amendment to be free from a deprivation of liberty without due process of law. In order to establish a

4

due process violation of this nature, Williams must show that he has a "liberty . . . interest which has been interfered with by the State" and that "the procedures attendant upon that deprivation were [not] constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted); *see also Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). Liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Thompson*, 490 U.S. at 460 (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Williams maintains that he has a liberty interest arising from the first source—the Due Process Clause—to engage in intrastate travel and free movement.[3] In support of his position, Williams relies principally on *Ramos v. Town of Vernon*, a case involving a challenge to a curfew ordinance, in which this Court observed that "[t]he right to intrastate travel, or what we sometimes will refer to as the right to free movement, has been recognized in this Circuit." 353 F.3d 171, 176 (2d Cir. 2003). Williams urges that this right to free movement includes the right to gain admittance to the Center. When the Town expelled and barred him from the Center, it did so, in Williams's view, without providing adequate pre-deprivation notice or an opportunity to be heard.

We first recognized a right to intrastate travel in *King v. New Rochelle Municipal Housing Authority*, 442 F.2d 646, 648 (2d Cir. 1971). Relying on the Supreme Court's holding in *Shapiro v. Thompson* that "moving from State to State or to the District of Columbia" constituted "a constitutional right," 394 U.S. 618, 634 (1969), the *King* Court concluded that "[i]t would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state," *King*, 442 F.2d at 648. Accordingly, in *King*, we applied strict scrutiny to a five-year residency requirement for municipal public housing because that requirement affected a "fundamental right" of two applicants who had moved to the city from

---

[3] Williams disclaims any reliance on state law for the liberty interest at issue in this case. *See* Reply Br. at 2.

elsewhere within the state. 442 F.2d at 648. More recently, we reinstated a civil rights complaint alleging a violation of the "constitutional right to travel" arising from a brutal attack on a young man riding his bicycle in Coney Island. *Spencer v. Casavilla*, 903 F.2d 171, 174-75 (2d Cir. 1990). Finally, we explained in *Ramos* that because the curfew in question "limit[ed] the constitutional right to free movement within the [t]own . . . , we assume that were this ordinance applied to adults, it would be subject to strict scrutiny." *Ramos*, 353 F.3d at 176.[4]

These precedents stand for the proposition that individuals possess a fundamental right to travel within a state. While the parameters of that right have not been sharply defined by our Court, it is clear that the right protects *movement between places* and has no bearing on *access* to a particular place. *Cf. Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) ("[T]he Constitution protects a right to travel locally through public spaces and roadways."). In *King* and *Shapiro*, the movement in question was the relocation of a permanent residence from one city to another; in *Spencer*, it was a bike ride; in *Ramos*, it was the passage through public places and establishments during certain hours. In each of these cases, the plaintiffs complained of a burden imposed on their freedom to move between places otherwise open to their presence. They did not claim that their freedom of movement compelled access to a particular place that was otherwise closed to them. Indeed, it would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building. Williams's right to intrastate travel might prevent the Town from burdening Williams's ability to drive, walk, or otherwise proceed from his home to the Center, but it has no bearing whatsoever on whether, upon Williams's arrival, the Town must admit him into the facility.

---

[4] Because the curfew applied to minors, we applied intermediate scrutiny. *Id.* at 180.

Because we hold that a municipality's decision to limit access to its facilities does not interfere with the right to free movement, we conclude that Williams's expulsion and temporary exclusion from the Center did not deprive him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. We therefore affirm the District Court's dismissal of Williams's due process claim.

**B.** **Williams Cannot Prevail on his First Amendment Claim Because his Speech Was Not Silenced or Chilled.**

Williams also claims that his expulsion from the Center and prosecution for trespass were undertaken to retaliate against him for exercising his First Amendment right to free speech. We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context. *Compare Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (requiring a private citizen who sued a public official to show: "(1) [the plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right"), *with Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (requiring evidence of "adverse employment action" where plaintiff was a public employee), *and Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (requiring, in the prison context, an adverse action by defendants and a causal connection between the adverse action and the protected speech). Regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.

The District Court rejected Williams's claim as a matter of law, concluding that his speech did not address a matter of public concern and therefore was not protected by the First Amendment. In reaching this conclusion, the District Court relied on a legal standard governing retaliation claims lodged by public employees. In such cases, we require "that the speech at issue involve matters of

public concern [because of] . . . 'the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (Courts evaluating "the constitutional protections accorded to public employee speech . . . [must] determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises." (citations omitted)). Because Williams was not a public employee when he criticized Bland, his speech need not have been on a matter of public concern for it to fall within the protection of the First Amendment for the purposes of this action.

Turning to the question of whether the First Amendment protects Williams's statements condemning Bland as, *inter alia*, a "Junior Mussolini" engaged in "intimidation tactics," we conclude that those statements, while perhaps coarse, fall within the ambit of protected speech. We come to this conclusion recognizing fully that the right to free speech is not absolute. As the Supreme Court explained in *Chaplinsky v. New Hampshire*:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.

8

315 U.S. 568, 571-72 (1942) (internal quotation marks and footnotes omitted) (quoting *Cantwell v. Conn.*, 310 U.S. 296, 309-10 (1940)). While comparing the manager of a recreational center to a fascist dictator easily qualifies as "personal abuse" in a colloquial sense, as a matter of law it does not rise to the level of "so-called 'fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California*, 403 U.S. 15, 20 (1971). In *Buckley v. Littell*, we held that the use of the word "fascist" to describe a political commentator fell "within the realm of protected opinion and idea" and therefore was not actionable in a libel suit. 539 F.2d 882, 894 (2d Cir. 1976). Indeed, comparing a disliked authority figure to a fascist leader is an exceedingly common—arguably hackneyed—rhetorical device. *See, e.g., Preda v. Nissho Iwai Am. Corp.,* 128 F.3d 789, 792 (2d Cir. 1997) (comparison between corporation's business practices and "Mussolini's Italy, Nazi Germany, and Communist Romania"); *NLRB v. New York Univ. Medical Ctr.*, 702 F.2d 284, 288 (2d Cir. 1983) (description of a New York University Medical Center administrator as a fascist), *vacated by* 464 U.S. 805 (1985); *United States v. Silverman*, 430 F.2d 106, 124 (2d Cir. 1970) (comparison between union official and Adolf Hitler); *United States v. Bollenbach*, 125 F.2d 458, 459 (2d Cir. 1942) (comparison between government investigators and Hitler); *Croce v. VIP Real Estate*, 950 F. Supp. 524, 537 (E.D.N.Y. 1997) (comparison of office manager and Hitler). Accordingly, we hold that Williams's comments were protected by the First Amendment.

The District Court did not consider any other elements of a retaliation claim. Nonetheless, we affirm the order of summary judgment, rather than remand for further proceedings, because, as a threshold matter, Williams has not alleged any cognizable injury under Section 1983.

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights—in other words, there is an injury requirement to state the claim." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002). In

9

*Colombo*, we explained that plaintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right. *Id.* To prove this deprivation, Williams must come forward with evidence showing either that (1) defendants silenced him or (2) "defendant[s']" actions had some actual, non-speculative chilling effect" on his speech. *Id.*; *see also Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (requiring plaintiff to show that defendants "inhibited him in the exercise of his First Amendment freedoms"). However, Williams has not alleged facts indicating that Bland and White have deprived Williams of his constitutionally protected right to free speech. Nor has he produced any evidence showing that defendants' actions chilled his speech or otherwise prevented him from speaking.

Indeed, the record shows that Williams cannot establish a cognizable injury. After his initial expulsion from the Center, Williams petitioned a member of the Center's Advisory Board for readmission. Following his arrest for trespass, Williams requested that the Town Supervisor review his year-long exclusion from the Center, complaining in a letter of "the unprofessional and belligerent treatment that [he] ha[d] received from the Administration of the Community Center." It is abundantly clear from the record that Williams's readiness to hold forth on his perceived mistreatment at the hands of Bland and White was unimpaired by their allegedly punitive conduct. Because Williams cannot show that his speech was either silenced or chilled—*i.e.*, that his right to free speech was actually violated—Williams's claim fails as a matter of law.

## C. Probable Cause Supported the Arrest and Prosecution of Williams

Williams further charges defendants Bland and White with violating his Fourth Amendment right to be free of false arrest and malicious prosecution on account of their respective roles in his arrest and prosecution for trespass. Assuming that Williams had "articulated a prima facie case against both Defendants Bland and White for claims of false arrest and malicious prosecution," the District

10

Court concluded that defendants were entitled to qualified immunity because they "believed in good faith that their actions were lawful and not designed to deliberately violate the Plaintiff's constitutional rights." On that basis, the District Court ruled in defendants' favor on these claims.

We agree that Williams's false arrest and malicious prosecution claims fail, but we arrive at this conclusion by a more direct route. In our view, there was probable cause to arrest Williams, who was therefore not deprived of any constitutional right. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) ("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show . . . that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

Probable cause "exists when [one] ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Such is the case here. A person of reasonable caution who (1) knew that Williams had been expelled from the Center and warned not to return without permission and (2) observed Williams return to the Center, apparently without having obtained that permission, would possess sufficient information to believe that Williams was trespassing on the Center's property. The reasonableness of this belief is not undermined by Williams's subsequent acquittal of trespass by the Town Court in light of the inadequacy of the police officer's oral warning. This is because a mistake about relevant facts—in this case, the adequacy of the warning—does not undermine the existence of probable cause. *See United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) ("The constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about

11

relevant facts. . . . [B]ecause the officers had a reasonable but mistaken belief that the SUV lacked license plates, stopping the vehicle was 'justified at its inception.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968))).[5]

On the record before us, it was not unreasonable for Bland and White to believe that the police officer had provided Williams with adequate notice that he would be arrested for trespass if he returned to the Center. Accordingly, the belief of Bland and White that Williams had trespassed on the Center's property when they saw him return on December 30 was also reasonable. They therefore had probable cause to have Williams arrested and prosecuted for that offense.

## CONCLUSION

Because (1) plaintiff's desire to use the town's community center was not protected by his liberty interest in intrastate travel; (2) plaintiff's speech was not silenced or chilled by defendants' allegedly punitive conduct; and (3) probable cause supported the arrest and prosecution of plaintiff for criminal trespass, we conclude that defendants are entitled to judgment as a matter of law. The judgment of the District Court is **AFFIRMED.**

---

[5] We note a further reason that Williams's eventual acquittal on the charge of criminal trespass does not undermine our determination that probable cause existed to arrest and prosecute Williams: the narrow basis for the acquittal. The Town Court held that the oral notice Williams received on December 27, 2002 was inadequate because it did not specify the length of his exclusion from the facility, as apparently required by statute. A person of "reasonable caution" would be excused for a lack of familiarity with this particular provision of the applicable law.