Michael WINTER, Plaintiff–Appellant,

v.

Howard NORTHRUP and Paul Hufcut,
Defendants–Appellees.

No. 08–1264–cv.

United States Court of Appeals,
Second Circuit.

May 29, 2009.

William S. Palmieri, New Haven, CT, for Appellant.

John J. Radshaw, III (Jeffrey E. Potter, on the brief), Howd & Ludorf, LLC, Hartford, CT, for Howard Northrup, Appellees.

Lynn D. Wittenbrink, Assistant Attorney General, on behalf of Richard Blumenthal, Attorney General of the State of Connecticut, for Paul Hufcut.

PRESENT: Hon. JOSEPH M. McLAUGHLIN, Hon. REENA RAGGI, Circuit Judges, and Hon. JANE A. RESTANI, Judge.*

### SUMMARY ORDER

Plaintiff Michael Winter appeals from an award of summary judgment in favor of defendants Howard Northrop,[1] former Constable of the Town of Woodbury, and Connecticut State Police Trooper Paul Hufcut, on claims of false arrest, malicious prosecution, and intentional infliction of emotion distress, brought pursuant to federal and state law. "We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (internal quotation marks omitted).

We will affirm a summary judgment award only where such review reveals "no genuine issue as to any material fact" and the movant's "entitle[ment] to judgment as a matter of law." Fed.R.Civ.P. 56(c). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

1. *Exercise of Supplemental Jurisdiction*

Winter first contends that the district court, having decided to grant summary judgment to defendants on Winter's federal claims, erred in exercising supplemental jurisdiction over his state law claims. We review a district court's decision to retain supplemental jurisdiction over state law claims for abuse of discretion. *See Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006).

■ " '[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' " *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). However, "depending on the precise circumstances of a case, [we] have variously approved and disapproved the exercise of supplemental jurisdiction where all federal-law claims have been dismissed." *Id.* Here, the district court did not abuse its discretion in retaining jurisdiction over plaintiff's state law claims. The "values of judicial economy, convenience, fairness, and comity," *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. at 350, 108 S.Ct. 614, each supported the exercise of supplemental jurisdiction given that (1) discovery had been completed, (2)

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

1. As noted by the district court, this is the correct spelling of the defendant's name.

the state claims were far from novel, and (3) the state and federal claims were substantially identical, *see generally Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir.2003) (noting approval of exercise of supplemental jurisdiction where, "by the time the federal claims were dismissed, discovery had been completed, the court had decided three dispositive motions, and the case was ready for trial, and where the state-law claims involved only settled principles, rather than legal questions that were novel"). The litany of district court cases cited by Winter are not to the contrary. *See* Appellant's Br. at 17–22.

### 2. *Failure Separately To Review State Claims for False Arrest and Malicious Prosecution*

■■■ Winter next challenges the entry of summary judgment on his state law claims for arrest and malicious prosecution, arguing that the district court effectively overlooked these claims by analyzing them solely by reference to federal law. With respect to Winter's malicious prosecution claim, this argument is plainly belied by the record, as the district court explicitly analyzed that claim under Connecticut law. *See Winter v. Northrop*, No. 06 Civ. 216, 2008 WL 410428, at *5 (D.Conn. Feb. 12, 2008).

The district court likewise undertook the necessary analysis of Winter's false arrest claims. Because the existence of probable cause to arrest is a complete defense to a claim of false arrest under both federal and Connecticut law, see *Williams v. Town of Greenburgh*, 535 F.3d 71, 78–79 (2d Cir.2008); *Walczyk v. Rio*, 496 F.3d 139, 152 (2d Cir.2007) (noting that Connecticut law requires proof that arresting officer lacked probable cause to sustain false arrest claim), and because the standards for assessing probable cause are "identical" under "federal and Connecticut law," a court need not "separately discuss federal and [Connecticut] law in assessing

probable cause" in this context, *Walczyk v. Rio*, 496 F.3d at 156.

### 3. *Probable Cause Determination*

Winter submits that the district court erred in concluding that his challenged arrests, based on warrants, were supported by probable cause. We disagree.

■■■ Reviewing courts properly accord "considerable deference to the probable cause determination of the issuing magistrate." *Walczyk v. Rio*, 496 F.3d at 157 (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). In this case, the issuing magistrate reasonably identified probable cause to arrest Winter for harassment of his former paramour from the victim's assertion to the police that Winter was continuing to contact her by mail and telephone despite her prior written demand that he cease further contact. Similarly, the magistrate reasonably identified probable cause to arrest Winter for violation of a protective order from a proffered copy of the order and the victim's complaint to the police of continued contact.

To the extent Winter faults the first finding by noting that the victim's demand letter only referenced further communication "by phone, email, or in person," without mention of U.S. mail, the point merits little discussion because the victim alleged multiple telephone contacts as well as one by mail. To the extent Winter faults reliance on the victim's reports, the law holds that, "absent circumstances that raise doubts as to the victim's veracity," a victim's report of criminal conduct is generally enough, by itself, to establish probable cause. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995). In any event, to sue the defendant officers, Winter "must make a 'substantial preliminary showing'" that the officer proffered the victim's false accusation "knowingly and intentionally, or with reckless disregard

for the truth." *Golino v. City of New Haven*, 950 F.2d 864, 870–71 (2d Cir.1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Winter's contentions and suppositions regarding, *inter alia*, the timing of his arrests, the officers' reliance on the victim's allegations, and statements allegedly made by Northrop to Winter fall far short of satisfying this standard. Accordingly, like the district court, we conclude as a matter of law that the challenged arrest warrants were supported by probable cause. *See Walczyk v. Rio*, 496 F.3d at 157.

#### 4. *Intentional Infliction of Emotional Distress*

Winter's final contention is that his state law claim for intentional infliction of emotional distress presented a factual question that should have been submitted to a jury, and that the district court therefore erred in dismissing that claim as a matter of law. We identify no error in the district court's dismissal. To prevail on such a claim under Connecticut law, a plaintiff must demonstrate, *inter alia*, that "defendants' conduct was so 'extreme and outrageous' as to 'exceed[ ] all bounds usually tolerated by decent society.'" *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 52 (2d Cir.2003) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443, 815 A.2d 119 (2003)). Conduct "that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. at 443, 815 A.2d 119. Under Connecticut law, whether a defendant's conduct is sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress is initially a question for the court to determine, and will be submitted to a jury "[o]nly

where reasonable minds disagree." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

We assume, as we must, the truth of Winter's allegations regarding Northrop's phone calls to him and his parents and Northrop's conduct during his visit to the home of Winter's parents. Viewing these allegations in the context of an ongoing investigation into plaintiff's alleged harassment of his former girlfriend, we agree with the district court that the conduct described by Winter, while potentially insulting and unprofessional, is "not so atrocious as to exceed all bounds usually tolerated by decent society," and is therefore "insufficient to form the basis of an action for intentional infliction of emotional distress." *Id.* at 212, 757 A.2d 1059.

We have considered Winter's additional arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.