11-5370-cv
*Selevan, et. al v. New York Thruway Authority (NYTA), et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: October 23, 2012                    Decided: March 27, 2013)

Docket No. 11-5370-cv

───────────────────────────────────────────

ROBERT SELEVAN, individually and on behalf of all others similarly situated,
ANNE RUBIN, individually and on behalf of all others similarly
situated, DAVID TALARICO, SAMUEL TAUB,

*Plaintiffs-Appellants,*

v.

NEW YORK THRUWAY AUTHORITY, JOHN L. BUONO, individually and as
Chief Executive and Chairman of the New York Thruway Authority,

*Defendants-Appellees.*

───────────────────────────────────────────

Before: LEVAL, CABRANES, and SACK, *Circuit Judges.*

Appeal from a November 28, 2011 Memorandum Decision and Order of the United States

District Court for the Northern District of New York (Gary L. Sharpe, *Chief Judge*) granting defendants-

appellees' motion for summary judgment, dismissing all of plaintiffs-appellants' claims, and denying

plaintiffs-appellants' motions for class certification and for appointment of class counsel.

Plaintiffs challenge the constitutionality of a toll policy of the New York Thruway Authority

that allows residents of one island municipality, who must use toll bridges in order to travel by car

between their homes on Grand Island, New York, and any location not on Grand Island, to use these

bridges at a discounted rate, but denies the same discount to all other motorists. We hold that: (1)

plaintiffs have Article III standing; (2) the District Court properly evaluated plaintiffs' constitutional right-to-travel and dormant Commerce Clause claims under the three-part test set forth in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994); and (3) the District Court correctly applied the *Northwest Airlines* test to the facts of this case.

Affirmed.

HARLEY J. SCHNALL (Seth R. Lesser, Fran L. Rudich, Klafter, Olsen & Lesser LLP, Rye Brook, NY; Brian L. Bromberg, Bromberg Law Office, P.C., New York, NY, *on the brief*), Law Office of Harley J. Schnall, New York, NY, *for Plaintiffs-Appellants.*

ROBERT M. GOLDFARB (Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, *on the brief*), Office of the Attorney General of the State of New York, Albany, NY, *for Defendants-Appellees.*

PER CURIAM:

We consider the constitutionality of a policy of the New York Thruway Authority that provides a toll discount to residents of Grand Island, New York, who must use bridges (jointly, "Grand Island Bridge" or the "bridge") in order to travel by car between their homes and any location not on Grand Island, while denying the discount to all other motorists. Plaintiffs in this putative class action are motorists who use the Grand Island Bridge but, because they are not residents of Grand Island, do not qualify for the lowest toll rate. They seek a judgment declaring that the toll discount policies violate the so-called dormant Commerce Clause as well as the constitutional right to travel that courts have located in the Privileges or Immunities and Equal Protection Clauses of the Fourteenth Amendment, both in violation of 42 U.S.C. § 1983.[1]

---

[1] Under the Commerce Clause, Congress has the power "[t]o regulate Commerce . . . among the several States . . . " U.S. Const., art. I, § 8, cl. 3. In addition, "the [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). This "negative" aspect of the

2

We first encountered this case in 2009 when we held, in substance, that plaintiffs' complaint survived defendants' motion to dismiss. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) ("*Selevan I*"). In particular, we affirmed the judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*), insofar as it dismissed plaintiffs' challenge to the Thruway's toll policy under the Privileges and Immunities Clause of Article IV of the Constitution,[2] but we vacated the District Court's judgment insofar as it held that plaintiffs: (1) had failed to establish Article III standing; (2) were not proper parties to allege a violation of the dormant Commerce Clause under the Supreme Court's "prudential standing" doctrine; and (3) had not stated claims under the dormant Commerce Clause or under the Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment of the Constitution. *Id.* at 102-04. We also remanded the cause to the District Court for further proceedings. After the filing of a second amended complaint ("SAC"), a course of discovery, and entry of summary judgment in favor of defendants, the case returns for us to consider the merits of plaintiffs' remaining constitutional claims.

Plaintiffs-appellants Robert Selevan, Anne Rubin, David Talarico, and Samuel Taub (jointly, "plaintiffs") challenge the November 28, 2011 Memorandum Decision and Order of the District Court which, among other things, granted judgment in favor of the Thruway and its Chief Executive and Chairman, John L. Buono (jointly, "defendants" or "NYTA"). In this appeal, we are asked to consider

Commerce Clause "has come to be called the dormant Commerce Clause[, the law of which] is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-38 (2008) (internal quotation marks omitted).

[2] The Privileges and Immunities Clause of Article IV provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. Const. art. IV, § 2, while the Privileges or Immunities Clause of the Fourteenth Amendment states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States," U.S. Const. amend. XIV, § 1. In the context of this case, we have previously observed that Article IV uniquely "mandates a reciprocal arrangement among the several states comprising the United States whereby residents of one state are entitled to enjoy the same rights as citizens of other states." *Selevan I*, 584 F.3d at 102. We affirmed dismissal of an Article IV claim because it did not "extend[ ] to residents of Canada who are also U.S. citizens." *Id.* at 103. Following remand, plaintiffs filed a second amended complaint, which did not assert any claims for violations of Article IV; plaintiffs also did not raise any arguments based on Article IV before the District Court. Accordingly, we now consider only a Privileges or Immunities Clause claim under the Fourteenth Amendment.

3

whether the District Court: (1) should have reviewed plaintiffs' right-to-travel claims under the test of "strict scrutiny"; and (2) properly applied the three-factor test established by the Supreme Court in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994) ("*Northwest Airlines*"), to plaintiffs' right-to-travel and dormant Commerce Clause claims.

For the reasons that follow, we affirm the judgment of the District Court.

## BACKGROUND

The municipality of Grand Island, New York is located on an island in the Niagara River, approximately halfway between Niagara Falls, New York and Buffalo, New York.[3] *See Selevan I*, 584 F.3d at 87. Grand Island is connected to the surrounding mainland, to the north and south, by the Grand Island Bridge, which is maintained and operated by NYTA as part of Interstate-190. *Id.* Each noncommercial vehicle crossing the bridge must pay a toll at one of three rates: (1) a general passenger rate of $1.00 per trip ("passenger rate"); (2) a commuter rate of 28 cents per trip ("commuter rate"); or (3) a Grand Island resident rate of 9 cents per trip ("resident rate").[4] Any motorist may qualify for the 28-cent commuter rate by pre-paying for a "bundle" of at least 20 trips. Only residents of Grand Island, however, may qualify for the 9-cent resident rate. Non-residents of Grand Island who do not pre-pay for a commuter rate bundle must pay the one-dollar passenger rate.

Plaintiffs Robert Selevan and Anne Rubin (jointly, "original plaintiffs"), residents of Nassau County, New York and Ontario, Canada, respectively, commenced this putative class action in March 2006. *See id.* at 86-87. The original plaintiffs allegedly paid the passenger rate to use the Grand Island Bridge, *id.* at 101, and claimed that the NYTA's toll scheme violated their constitutional rights, *id.* at 88-

---

[3] Grand Island, New York has a population of approximately 20,374 residents. United States Census Bureau: Community Facts, http://factfinder2.census.gov (last visited Mar. 3, 2013). We are informed that Grand Island's population constitutes approximately one-tenth of one percent of the total population of New York. Appellants' Br. 9.

[4] The passenger and commuter rates have increased during the pendency of this litigation. *See Selevan I*, 584 F.3d at 87. Like the District Court, we consider plaintiffs' instant claims under the more recent rates. *See Selevan v. N.Y. Thruway Auth.*, No. 06-cv-291(GLS/DRH), 2011 WL 5974988, at *5 (N.D.N.Y. Nov. 28, 2011).

4

89. In a careful opinion dated January 18, 2007, the District Court dismissed the complaint of the original plaintiffs. *Id.* at 87.

In *Selevan I*, we affirmed in part, vacated in part, and remanded the action to the District Court for further proceedings, holding that the original plaintiffs had stated claims under the dormant Commerce Clause and pursuant to their constitutional right to travel under the Fourteenth Amendment's Privileges or Immunities and Equal Protection Clauses. *Id.* at 104. We directed that on remand "plaintiffs' dormant Commerce Clause and right to travel claims must be analyzed under the three-factor test set forth by the Supreme Court in *Northwest Airlines . . . .*" *Id.*

Following our remand of the cause to the District Court, the original plaintiffs amended their complaint to add David Talarico and Samuel Taub, two residents of Erie County, New York, who allegedly paid the commuter rate. Plaintiffs also restated their dormant Commerce Clause and right-to-travel claims. On November 28, 2011, the District Court granted defendants' motion for summary judgment in its entirety. This timely appeal followed.

## DISCUSSION

We review a district court's summary judgment *de novo*, *see Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012), with "[a]ll evidence submitted on the motion . . . construed in the manner most favorable to the nonmoving party," *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) (quotation marks omitted). A defendant is entitled to summary judgment where "the plaintiff[s] [have] failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiffs bear the burden of proof. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quotation marks omitted).

On appeal, defendants reassert the claim that plaintiffs lack standing to bring this action. We rejected this argument in *Selevan I*, before the parties conducted discovery, but defendants now renew their standing argument by asserting that plaintiffs have failed to sustain their evidentiary burden. Plaintiffs, in turn, claim that the District Court (1) erred by not reviewing their right-to-travel claims under the test of strict scrutiny, and (2) misapplied each of the three factors set forth in *Northwest Airlines*, 510 U.S. at 369, with respect to both their right-to-travel and dormant Commerce Clause claims.

## I. Standing

To establish Article III standing, plaintiffs must demonstrate an "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (emphasis omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In *Selevan I*, we held that "[i]nasmuch as plaintiffs [had] alleged that they have paid higher tolls as a result of NYTA's policy, they have articulated a commercial, economic injury that is concrete and specific to them, and is caused by NYTA's alleged violation of the Commerce Clause." 584 F.3d at 89 (quotation marks omitted). Defendants nevertheless ask us to revisit our holding based on an affidavit of the NYTA's chief financial officer, which states that the financial impact of the resident discount on nonresident motorists is negligible and that the "NYTA does not charge higher tolls to other users of the [Grand Island Bridge] or the overall Thruway system *because of the resident discount*." Appellees' Br. 30 (emphasis supplied). In short, defendants argue that because the plaintiffs have "offered no proof . . . that the tolls they pay are inflated because of the resident discount or that termination of the [resident]

discount would likely result in a reduction of [the passenger rate or the commuter rate] paid by plaintiffs[,]" they lack standing. *Id.* at 31.

As we noted in *Selevan I*, however, "plaintiffs define their injury as the burden of paying higher toll rates than Grand Island residents and the denial of toll discounts based on their residency status." 584 F.3d at 89 (alterations and quotation marks omitted). The asserted fact that plaintiffs pay higher tolls than the Grand Island residents is not disputed, and it is sufficient to establish Article III standing, regardless of how the NYTA would establish tolls for the Grand Island Bridge absent the discount for island residents. *See id.* at 89 (Article III standing), 91-92 (prudential standing).

## II. Standard of Review: Strict Scrutiny

On appeal, plaintiffs claim that the Grand Island Bridge toll scheme infringes upon a "fundamental right"—their constitutional right to travel—and therefore must be analyzed under the test of strict scrutiny. Courts have long recognized that the Constitution protects a right to travel within the United States, including for purely intrastate travel. *See, e.g.*, *Saenz v. Roe*, 526 U.S. 489, 500 (1999) (noting that the right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State"); *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008).

Generally, "[w]hen a local regulation infringes upon a constitutionally-protected right, we apply [the test of] strict scrutiny, requiring the municipality to show that the regulation is narrowly tailored to serve a compelling governmental interest." *Selevan I*, 584 F.3d at 100 (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 (2d Cir. 2007)). This principle, however, is not applicable to the current context because "minor restrictions on travel simply do not amount to the denial of a fundamental right." *Id.* at 101 (quotation marks omitted). Indeed, in *Selevan I*, we held that the Grand Island Bridge

7

toll scheme was a "minor restriction" on plaintiffs' right to travel and not a "penalty." *Id.* ("[P]laintiffs do not allege that they . . . pay the full toll in order to commute to work or that the toll has otherwise had a substantial financial impact on them. . . . [T]hey allege that they paid the toll en route to New Jersey for shopping and other activities. These facts suggest at most a 'minor restriction' on plaintiffs' right to travel, rather than a 'penalty.'"). Relying on our comments in *Selevan I*, plaintiffs now claim that the addition of plaintiffs Talarico and Taub—both of whom allegedly pay the *commuter* rate on a weekday basis—transforms the toll into a "penalty" rather than a "minor restriction."

Plaintiffs misread *Selevan I*. Our discussion of the facts alleged in the original complaint was merely illustrative of how and why the toll did not constitute a "penalty." Contrary to plaintiffs' view, we did not indicate that "the district court could and should apply strict scrutiny . . . if the plaintiffs included individuals who traveled the [Grand Island Bridge] in the course of commuting to work . . . ." Appellants' Br. 20. Rather, in contemplation of a remand to the District Court, we drew the attention of the trial court and the parties to *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707 (1972) ("*Evansville*"), where the Supreme Court "recognized a difference between the sort of 'invidious distinctions' that penalize the right to travel and cases in which a state has simply levied 'a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance.'" *Selevan I*, 584 F.3d at 102 (citations omitted) (quoting *Evansville*, 405 U.S. at 714). Indeed, the *Evansville* Court permitted the imposition of "fees designed to offset the cost of maintaining a state-provided facility . . . [so long as the fees] 'reflect[ed] a uniform, fair and practical standard relating to public expenditures.'" *Selevan I*, 584 F.3d at 102 (quoting *Evansville*, 405 U.S. at 716).

In *Selevan I*, we instructed the District Court on remand to reexamine the Grand Island Bridge toll policy with an eye to determining "whether the toll policy implicates the right to travel in the context discussed in *Evansville*." 584 F.3d at 102. We explained that, if the District Court were to find

8

that the toll policy involved "invidious distinctions," then the test of strict scrutiny would apply; if it were to determine that the toll policy was merely "a minor restriction on travel," then the three-part test announced in the Supreme Court's subsequent decision in *Northwest Airlines*, 510 U.S. at 369, would govern. *Id.* On remand, the District Court concluded that since the "toll structure constitutes a reasonable user fee designed to defray the costs of maintenance and construction . . . strict scrutiny is inappropriate." *Selevan v. N.Y. Thruway Auth.*, No. 06-cv-291(GLS/DRH), 2011 WL 5974988, at \*6 (N.D.N.Y. Nov. 28, 2011). In short, the mere addition of plaintiffs who pay the commuter rate did not transform a minor restriction on travel into an instance of invidious distinctions. *See Selevan I*, 584 F.3d at 101. Hence, as the District Court held, the toll policy is subject to the *Northwest Airlines* test and not the test of strict scrutiny.

### III. *Northwest Airlines* Three-Part Test

Under *Northwest Airlines*, the constitutional permissibility of fees charged for the use of state facilities is evaluated under a three-part test, which asks whether the fee "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Northwest Airlines*, 510 U.S. at 369. On remand, the District Court determined that the Grand Island Bridge toll scheme satisfied all three parts of the test. *Selevan*, 2011 WL 5974988, at \*3-7. Plaintiffs challenge that holding, requiring us, in turn, to analyze each part of the test.

### A.

To determine whether the Grand Island Bridge toll policy "is based on some fair approximation of use of the facilities," *Northwest Airlines*, 510 U.S. at 369, we directed the District Court to "consider whether the NYTA policy at issue reflects 'rational distinctions among different classes of' motorists using the Bridge, so that each user, on the whole, pays *some* approximation of his or her fair share of the state's cost for maintaining the Bridge." *Selevan I*, 584 F.3d at 98 (emphasis added)

9

(quoting *Evansville*, 405 U.S. at 718). The District Court concluded that the resident discount is meant to alleviate both the severe geographic "isolation" faced by Grand Island residents and the "residuary effects of nearly 25 million non-resident travelers bisecting the[] island annually." *Selevan*, 2011 WL 5974988, at *5.

We find these factors to be "not [a] wholly unreasonable" basis upon which to draw a distinction between Grand Island residents, who, because of the small size and isolation of Grand Island, may need to use the bridge and pay the toll several times a day, and other motorists using the bridge. *Evansville*, 405 U.S. at 718.[5] And we agree that under the Grand Island Bridge toll scheme, motorists "on the whole, pay[] some approximation" of their fair share for use of the bridge. *Selevan I*, 584 F.3d at 98. Even while acknowledging that an imperfect estimate of a motorist's fair share is constitutionally permissible, plaintiffs argue that the toll scheme provides a "near exemption" for residents and is therefore a "grossly unfair misallocation of costs." But "it is the amount of the [toll], not its formula, that is of central concern." *Evansville*, 405 U.S. at 716. Even assuming *arguendo* that some degree of inequity exists in the very small difference between the resident rate and the rates for others, no evidence in the record suggests that the District Court erred in finding that plaintiffs are paying "some approximation" of their fair share of the costs of using the Grand Island Bridge. *Selevan*, 2011 WL 5974988, at *5-6.

Accordingly, we conclude that the District Court did not err in deciding that the Grand Island Bridge toll scheme is "a fair, if imperfect, approximation of the use of facilities for whose benefit they are imposed." *Evansville*, 405 U.S. at 717.

---

[5] Plaintiffs argue that to be "rational" under *Evansville* and *Northwest Airlines*, a distinction among motorists can only be based on the usage of a bridge (or other facility). This reading of the *Evansville/Northwest Airlines* doctrine is unduly narrow. While *Evansville* upheld many distinctions between different classes of airport passengers and aircraft based principally on their use of airport facilities, 405 U.S. at 718-19, it also upheld distinctions not based solely on usage. For instance, the *Evansville* Court upheld a *complete* exemption for active members of the military from the $1.00 tax imposed on other airport passengers. *Id.* at 717 & n.7. While the usage of the Grand Island Bridge might be one rational basis upon which to draw "distinctions among different classes of motorists," it need not be the only one.

10

**B.**

To satisfy the second part of the *Northwest Airlines* test, the Grand Island toll cannot be "excessive in relation to the benefits conferred." 510 U.S. at 369. As we emphasized in *Selevan I*, however, "there need not be a perfect fit between the use of the Bridge and the support of the Bridge by the toll. The *Northwest Airlines* test is not inflexible; it simply requires reasonableness." *Selevan I*, 584 F.3d at 98 (quotation marks, citations, and alterations omitted). After discovery, and based on evidence regarding NYTA's costs and expenditures, the District Court determined that the NYTA had not been collecting excess revenues from its Grand Island tolls. *Selevan*, 2011 WL 5974988, at *5. This conclusion was based, in part, upon the reasonable view that any revenues collected did not exceed proper margins, given the NYTA's public safety responsibilities and its expenses for construction and maintenance. *Id.*[6] The District Court concluded that "the 28 cents and $1.00 charged per trip under the commuter and passenger plans, respectively, are not excessive in relation to the benefits which they confer; namely access to a well maintained, trooper-patrolled highway which either enables or expedites passengers' travels."[7] *Id.*

Upon a review of the record, we agree with the District Court's decision on this factor, substantially for the reasons outlined in its November 28, 2011 Memorandum Decision and Order. *Id.*

---

[6] Plaintiffs dispute the District Court's assessment by arguing, *inter alia*, that: (1) the District Court did not limit its inquiry to Grand Island Bridge, allowing determinations of expenditures across the NYTA system; (2) the NYTA spent "over $100 million in operating, maintenance and capital costs for its subsidiary Canal Corporation"; and (3) the "toll revenues are used to subsidize the canal system, a largely recreational facility." There is simply no evidence in the record, however, that tolls from the Grand Island Bridge were diverted for other, unrelated, uses in a manner that would make them excessive. *Cf. Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 87 (2d Cir. 2009) (noting that the passenger fees supported numerous expenditures of "no actual or potential benefit" to the passengers). Indeed, as defendants note, without contradiction, the Grand Island Bridge toll rates are far lower than rates charged by comparable bridge and tunnel authorities for passenger vehicle tolls. As a consequence, plaintiffs have not sustained their claims about excessiveness, and we find the Grand Island Bridge toll rates to be reasonable. *See Selevan I*, 584 F.3d at 98.

[7] On appeal, plaintiffs attempt to place the entire burden of proof for this element on defendants. Defendants, however, are entitled to summary judgment where "'plaintiff[s] cannot establish an essential element of the claim, on which element the plaintiff[s] ha[ve] the burden of proof, and the plaintiff[s] ha[ve] failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in [their] favor on that element.'" *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d at 509 (ellipses omitted) (quoting *Burke*, 981 F.2d at 1379).

11

## C.

In *Selevan I*, we held that "plaintiffs have not alleged that NYTA's toll policy 'discriminates' against interstate commerce." 584 F.3d at 95. Consequently, we noted that unless plaintiffs amended their complaint to identify an in-state interest that was being favored at the expense of competing out-of-state interests, the District Court did not need to assess whether the toll discriminated against interstate commerce on remand. *Id.* at 95, 98 n.4. Although plaintiffs subsequently amended their complaint, the District Court concluded that they failed to allege new facts sufficient to disturb our conclusion "that the [Grand Island Bridge] toll structure does not favor any in-state economic interest to the detriment of an out-of-state competitor." *Selevan*, 2011 WL 5974988, at *4. Following a review of the record, we agree.[8]

Consistent with our earlier instructions, the District Court did not err by not considering this part of the *Northwest Airlines* test.

---

[8] Plaintiffs' second amended complaint added Talarico and Taub as plaintiffs and asserted, without elaboration, that the tolls "discriminate to the disadvantage of out-of-state buyers and sellers of goods and services, and to the advantage of certain in-state buyers and sellers of goods and services, including, but not limited to, labor services, and place burdens on interstate commerce that exceed any local benefit that allegedly may be derived from them." SAC ¶ 38. Such conclusory allegations, however, are an insufficient basis upon which to sustain a claim of discrimination against interstate commerce. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In reaching our conclusion rejecting plaintiffs' claim under the dormant Commerce Clause, we are influenced by: (i) the reasonableness of the basis for granting a rate preference to Grand Island residents, who are unable to go from their homes to any place not on Grand Island without using the bridge and paying the toll; (ii) the very small amount of the differential between the rates charged to Grand Island residents and those charged to purchasers of commuter tickets; (iii) the failure of plaintiffs to make a showing that their toll rates would decrease if the differential in favor of Grand Island residents were eliminated; (iv) the fact that the beneficiaries of the differential represent only a tiny percentage of New York residents; and (v) the fact that no claim is made by any citizen or resident of a state other than New York.

## CONCLUSION

For the reasons stated above, we hold that:

(1) plaintiffs have standing under Article III of the Constitution;

(2) the toll policy at issue here was a minor restriction on travel and did not involve "invidious distinctions" that would require strict scrutiny analysis pursuant to the Fourteenth Amendment to the Constitution;

(3) the District Court correctly used, in the alternative, the three-part test set forth in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994), to evaluate both plaintiffs' right-to-travel and dormant Commerce Clause claims; and

(4) the Grand Island Bridge toll scheme (a) is based on "some fair approximation of use" of the bridges, (b) is not "excessive in relation to the benefits" it confers, and (c) does not "discriminate against interstate commerce."

Accordingly, the November 28, 2011 Memorandum Decision and Order of the District Court is **AFFIRMED.**