*1011 OPINION OF THE COURT
Thomas Marcelle, J.
Defendant Jacqueline Krahforst was charged with a violation of Vehicle and Traffic Law § 1144-a. A trial was held on October 28, 2016 in Cohoes City Court. Subsequent to trial, the court allowed the parties to make written arguments. The case was fully submitted to the court on December 2, 2016. A fair summary of the trial testimony follows.
Sergeant Anthony Pucci of the Cohoes Police Department was assigned to traffic patrol along the northbound lanes of Interstate 787 (1-787). At approximately 9:30 a.m., Sergeant Pucci saw another marked Cohoes police car on the grass adjacent to the right shoulder of the highway, with its blue and red lights activated, in the process of issuing a traffic citation to a civilian vehicle. Sergeant Pucci activated his blue and red lights and pulled behind the other police car. He did this to ensure the officer’s safety and to ensure northbound vehicles moved from the right lane into the left in compliance with the Ambrose-Searles Move Over Act which is codified in Vehicle and Traffic Law § 1144-a.*
While looking into his rearview mirror, Sergeant Pucci observed a grey Chevrolet van traveling north in the right lane of 1-787. The van did not move to the left lane as it went by the police units. Sergeant Pucci testified that while there was some traffic, it was not enough to impede the van from moving to the left lane. According to Sergeant Pucci there was “plenty of room for the suspect vehicle to move over [into the left lane] at all times.” Consequently, he turned on his siren, entered into traffic, pulled the van over and wrote Krahforst a traffic citation for violating section 1144-a.
Krahforst had a different interpretation of the traffic conditions than the Sergeant. She testified that she was traveling behind a large white truck. Implicit in the defendant’s testimony is that the white truck obscured her view of the police cars and their flashing lights until she was almost upon them. Nevertheless, upon sighting the police cars, she applied her brakes, looked at her speedometer and checked and *1012 rechecked her driver side-view mirror. She saw a car and she did not feel that it was appropriate to change lanes. Instead, she shifted her car to the left part of the right lane, slowed down and maintained a visual observation of the police officer who was returning to his unit. She maintains that under this scenario she is not guilty of violating section 1144-a.
Section 1144-a (a) provides in relevant part:
“Every operator of a motor vehicle shall exercise due care to avoid colliding with an authorized emergency vehicle which is . . . stopped . . . [and] is displaying [its lights] .... For operators of motor vehicles on parkways . . . due care shall include, but not be limited to, moving from a lane which ... is immediately adjacent to the shoulder . . . provided that such movement otherwise complies with the requirements of . . . eleven hundred twenty-eight of this title.”
First, the statute requires drivers to exercise due care to avoid collision with an emergency vehicle. Second, in addition to the general duty to exercise due care, on a multilane highway, like 1-787, due care means a driver has an obligation to move from the right lane to the left—provided that such lane change is in compliance with Vehicle and Traffic Law § 1128 (a). Section 1128 (a) provides that a vehicle shall not change “lane[s] until the driver has first ascertained that such movement can be made with safety.”
Normally, the court would resolve the conflicting testimony between Krahforst and Sergeant Pucci to determine if it was safe for Krahforst to change lanes. However, Krahforst argues that such an evaluation is unnecessary. She posits that since the statute provides that no lane change can happen until the driver asserts that it can be done safely, whether the vehicle can safely change rests solely upon the opinion of the driver. Thus, Krahforst takes the position that “the police officer’s testimony is irrevelant” (letter brief for defendant at 2).
Under defendant’s theory, the question presented is whether a driver who sincerely believes a lane change is unsafe, even though it is objectively safe to change lanes, has violated section 1144-a. The answer to that question turns upon a matter of statutory interpretation.
The court notes given the recent vintage of section 1144-a, no courts have yet interpreted the statute. It seems logical that since section 1144-a incorporates section 1128 (a) as the *1013 standard by which to judge whether a motorist should have safely moved from the right lane to the left, the court’s statutory analysis should begin with section 1128 (a) and the case law interpreting it.
Upon surveying the law, the court finds no precedent precisely on point. The cases deal with the safety of a lane change whereas this case concerns a non-lane change. This is no surprise—a driver never violates section 1128 (a) by deciding not to change lanes. Nevertheless, it would seem a fair implication that the standards employed by the courts in deciding lane change cases would be the same standard used in a non-lane change case.
In determining whether a driver violates section 1128 (a), courts have looked to objective factors concerning safety such as whether the lane change resulted in another vehicle’s having to veer, slam on its brakes or causes a collision (see e.g. Matter of Forman v New York State Dept. of Motor Vehs., 110 AD3d 1075, 1076 [2d Dept 2013]; Matter of Melzer v New York State Dept. of Motor Vehs., 83 AD3d 576 [1st Dept 2011]; Neryaev v Solon, 6 AD3d 510 [2d Dept 2004]). Thus, no matter what the driver thought was safe, if the facts prove that the lane change was objectively unsafe, then the driver has violated section 1128 (a).
Still it must be said that when viewed in isolated context section 1128 (a) could rationally be given the meaning which defendant advances. “Statutory construction, however, is a holistic endeavor” (United Sav. Assn. of Tex. v Timbers of Inwood, Forest Associates, Ltd., 484 US 365, 371 [1988, Scalia, J.]). Thus, the court must construe the statute with the aid of the whole text cannon (see generally Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 24 at 167 [2012]). The canon implores that the “meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view” (Panama Refining Co. v Ryan, 293 US 388, 439 [1935, Cardozo, J., dissenting]).
Here, section 1144-a (a) superimposes a general duty of due care: “For operators of motor vehicles on parkways . . . due care shall include, but not be limited to, moving from a lane which ... is immediately adjacent to the shoulder.” Due care is a familiar term in the law and simply means “that care which is exercised by reasonably prudent drivers” (Matter of Russell v Adduci, 140 AD2d 844, 845-846 [3d Dept 1988]). The whole *1014 text canon supports the proposition that whether the vehicle can safely change lanes is governed by the actions that would have been taken by a reasonably prudent driver.
Additionally, the purpose of the statute, as gleamed from the text, is quite clear. The statute commands motorist to change lanes (safely of course) when approaching an emergency vehicle on a divided highway. Without question, section 1144-a imposes a duty on a driver to assert if it is safe to change lanes—once such a duty is imposed, it may not be ignored. However, according to defendant, a driver who cannot conclude that a lane change is safe, no matter how unreasonable the conclusion is, does not violate section 1144-a. The problem with defendant’s interpretation is that it gives the driver a veto over the main statutory duty to change lanes. Thus, if defendant’s interpretation is to be accepted, the court must find that on the one hand the legislature required drivers to move over for police safety, but on the other hand, let the decision rest upon the unreviewable discretion of the driver. That does not quite seem correct—this interpretation would “enable offenders to elude its provisions in the most easy manner” (The Emily, 22 US 381, 389 [1824]).
Based upon the case law interpreting section 1128 (a), the due care duty standard imposed by and the purpose of section 1144-a, the court holds that if the evidence establishes, beyond a reasonable doubt, that a reasonably prudent driver would have deemed it safe to change lanes and the defendant failed to change lanes, then the defendant violated section 1144-a.
Having so concluded, the court must resolve the difference between the officer’s and the defendant’s testimony. This much appears undisputed. Defendant says she saw a car in her mirror and Sergeant Pucci said there was traffic in the left lane. However, there is a striking contrast between the officer’s testimony which involved the elements of distance and time— there was “plenty of room for the suspect vehicle to move over [to the left lane] at all times” and the defendant’s testimony which involved thoughts and feelings—for example, “I felt that it was inappropriate to move over” and “I didn’t feel it was safe.” Absent from the defendant’s testimony are specifics as to distance and speed of the vehicle she observed in her mirror. Thus, the court credits Sergeant Pucci’s testimony and finds, under the circumstances, that a reasonably prudent driver would have been able to change lanes.
Significantly, and perhaps dispositive of this case, defendant testified that she never activated her blinker. By activating her *1015 left turn signal, she would have expressed her intention and desire to move into the left lane. The failure to use her turn signal provides circumstantial evidence that the defendant lacked the intent to move over. Additionally, the signal would have caused the cars in the adjacent lane of traffic to react to her desire to move over by slowing down and giving her even more room to change lanes. Under the circumstances of this case, due care required, at minimum, that the driver engage her turn signal. Defendant’s failure to do so violated the statute.
Finally, to the extent that the defendant suggests that she lacked sufficient time in which to make a proper determination to change lanes because her view was blocked by a truck, the court rejects this defense. The two police units were pulled over to the extreme right of the shoulder on to the grass adjoining the pavement. Further, the testimony established that the shoulder along 1-787 is the width of a full traveling lane. Consequently, the angle between the right driving lane and the location of the police cars created ample sight distance for the defendant to react. In any event, failure to see two police units with flashing lights under these circumstances would be a breach of defendant’s duty to exercise due care because due care encompasses “the legal concept that every driver has a duty to see what is there to be seen through the proper use of his or her senses” (Smith v State of New York, 121 AD3d 1358, 1359 [3d Dept 2014]).
Therefore, under the totality of the circumstances, the court finds beyond a reasonable doubt that defendant Jacqueline Krahforst violated Vehicle and Traffic Law § 1144-a. The court will allow either counsel to be heard before the court imposes the sentence. Letter addressing sentencing should be submitted no later than two weeks from the date of this decision.

 The Ambrose-Searles Move Over Act took effect January 1, 2011 and honors the memory of two police officers, New York State Trooper Robert Ambrose and Onondaga County Deputy Sheriff Glenn M. Searles, who were fatally injured on the shoulders of highways while exercising routine traffic responsibilities (Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 387).