24-2071-cr
*United States v. Overton*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of September, two thousand twenty-five.

PRESENT:
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                                                  24-2071-cr

KORI E. OVERTON, AKA KI,

> *Defendant-Appellant.*

_____

FOR APPELLEE:                      Thomas R. Sutcliffe, Assistant United States Attorney, for John A. Sarcone III, Acting United States Attorney for the Northern District of New York, Syracuse, New York.

FOR DEFENDANT-APPELLANT:          Kevin A. Luibrand, Luibrand Law Firm PLLC, Latham, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on August 2, 2024, is **AFFIRMED**.

Defendant-Appellant Kori E. Overton appeals from the district court's judgment of conviction, following his conditional guilty plea to: (1) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(A)(i); (2) possession of a controlled substance with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (3) possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1]  As relevant here, Overton's conditional plea reserved his right to challenge the district court's order, entered on July 28, 2023, denying his motion to suppress evidence seized during a traffic stop of his vehicle on September 15, 2020, including a firearm and narcotics, which formed the bases of his convictions.

On appeal, Overton challenges the denial of his suppression motion, following an evidentiary hearing, arguing that the district court erred in finding that New York State Police Trooper Kenneth Ahigian ("Trooper Ahigian") possessed the requisite reasonable suspicion to initiate the traffic stop that subsequently resulted in the seizure of the evidence underlying his convictions.  Overton makes two main arguments.  First, he asserts that the district court erred in concluding that Overton committed a violation of New York Vehicle and Traffic Law § 1144-a(b) because, contrary to the district court's interpretation, the statute does not require motorists to move from the lane adjacent to the shoulder of the highway when a hazard vehicle displaying

---

[1] The district court sentenced Overton principally to 72 months' imprisonment and three years' supervised release.

2

amber lights is parked on the shoulder. Second, he contends that the district court erred in crediting the testimony of Trooper Ahigian, who testified that he observed Overton pass a tow truck parked on the shoulder of the road (with its amber waning lights activated), while Overton was driving in the righthand lane adjacent to the shoulder and the truck, and while the left lane was empty. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"On review of a challenged suppression order, we examine the district court's findings of fact for clear error, reviewing *de novo* questions of law and mixed questions of law and fact, including the existence of reasonable suspicion to stop or extend a stop." *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018). The Court also extends "special deference" to factual findings that turn on determinations of witness credibility. *United States v. Lyle*, 919 F.3d 716, 727 (2d Cir. 2019).

The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *United States v. Wallace*, 937 F.3d 130, 137 (2d Cir. 2019) (alteration adopted) (quoting *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). As a result, "traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (internal quotation marks and citation omitted). "The reasonable suspicion standard is not high and is less demanding than probable cause." *Santillan*, 902 F.3d at 56 (internal quotation marks and citation omitted). That said, "[r]easonable suspicion requires more than an inchoate suspicion or mere hunch."

3

*Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks and citation omitted). Instead, "[r]easonable suspicion demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing." *Wallace*, 937 F.3d at 138 (internal quotation marks and citation omitted). Therefore, "[i]n assessing reasonable suspicion, courts look at the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene, whose insights are necessarily guided by his experience and training." *Id.* (internal quotation marks and citations omitted).

Here, Overton first argues that the district court erroneously concluded that Trooper Ahigian possessed the requisite reasonable suspicion to believe that Overton committed a traffic violation under New York Vehicle and Traffic Law § 1144-a(b), and thus, the traffic stop violated the Fourth Amendment. More specifically, Overton asserts that "[he] did not violate Section 1144[-]a(b)" because Section 1144-a(b) "does not require a driver to move over to the left-hand lane when passing a hazard vehicle [displaying its] amber lights such as a tow truck," but rather, only instructs the motorist to use "due care" and switching lanes is merely an "*example*" of what such due care might entail depending on the circumstances.[2] Appellant's Br. at 12 (emphasis in original).

We find Overton's argument unavailing because, on *de novo* review, Section 1144-a(b) clearly states that the duty of care standard "includes, but is not limited to, a requirement to move over to another lane." N.Y. Veh. & Traf. Law § 1144-a(b), Practice Commentaries. Section 1144-a(b) provides, in relevant part:

> Every operator of a motor vehicle shall exercise due care to avoid
> colliding with a hazard vehicle which is parked, stopped or standing

---

[2] The parties do not dispute that the tow truck Overton passed is considered a "hazard vehicle" under Section 1144-a(b).

4

on the shoulder or on any portion of such highway and such hazard vehicle is displaying one or more amber lights . . . . For operators of motor vehicles on parkways or controlled access highways, *such due care shall include, but not be limited to, moving from a lane which contains or is immediately adjacent to the shoulder where* . . . (ii) such hazard vehicle designed for the towing or pushing of disabled vehicles [is] displaying one or more amber lights . . . provided that such movement otherwise complies with the requirements of this chapter including, but not limited to, the provisions of sections eleven hundred ten and eleven hundred twenty-eight of this title.

N.Y. Veh. & Traf. Law §1144-a(b) (emphasis added). As the district court correctly determined, a plain reading of Section 1144-a(b) suggests that, in addition to the general duty to exercise due care, the statute obligates motorists to switch from a lane which contains a hazard vehicle or a lane where the hazard vehicle is immediately adjacent to the shoulder, provided that such a lane change can be done safely, in compliance with New York Vehicle and Traffic Law § 1128(a) and other vehicular traffic laws. In other words, contrary to Overton's assertion otherwise, the statute, with its "shall include" language, provides a *mandated* action that is necessary to satisfy the "due care" standard—namely, to change lanes when approaching a hazard vehicle under those circumstances, if the motorist can do so safely—but also provides that a motorist's obligations under the "due care" standard are not necessarily limited to switching lanes.[3]

Indeed, several New York state courts have reached the same conclusion when interpreting

---

[3] We note that the legislative history, as reflected in the Bill Jacket at the time Section 1144 was amended to add Section 1144-a(b), further supports our interpretation of the plain text. *See Liberty Ins. Corp. v. Hudson Excess Ins. Co.*, 147 F.4th 249, 266 (2d Cir. 2025) ("When considering the statute's context and legislative history, New York courts give considerable weight in discerning legislative intent to lawmakers' contemporaneous interpretations of a statute, especially those expressed in the Governor's Bill Jacket attached to all New York laws and the sponsor's Memorandum contained therein." (alteration adopted) (internal quotation marks and citation omitted)). More specifically, according to the Bill Jacket, the reason for that amendment was the existing law's failure to "require . . . drivers traveling on controlled access highways to move over to the adjacent lane when approaching or passing a hazardous vehicle," and furthermore, that the amendment would "provide a measure of safety for [] drivers and workers who travel in hazard vehicles from adjacent traffic on all New York State roadways." New York Bill Jacket, L. 2011, 2011 S.B. 2769, Ch. 458, at 5.

Section 1144-a(a), which contains the same "shall include" language but refers to emergency vehicles, rather than the hazard vehicles covered by Section 1144-a(b). *See, e.g.*, *People v. Gonzalez*, 62 Misc.3d 130(A) (N.Y. App. Term. 2018) ("Where, as here, a multi-lane highway is involved, the duty to exercise 'due care' means that the driver *must, among other things,* move from the lane which contains the stopped emergency vehicle, or is immediately adjacent to the shoulder where the emergency vehicle is stopped, to another lane, provided that such lane change is in compliance with, among other things, Vehicle and Traffic Law § 1128(a).") (emphasis added); *People v. Kohl*, 62 Misc. 3d 26, 28 (N.Y. App. Term. 2018) (holding that a "[t]rooper's testimony established, prima facie, a violation of Vehicle and Traffic Law § 1144-a(a), as defendant had failed to move from the lane that was immediately adjacent to the stopped emergency vehicle when it had been safe to do so"); *People v. Krahforst*, 43 N.Y.S.3d 734, 738 (N.Y. City Ct. 2016) ("Based upon the case law interpreting § 1128(a), the due care duty standard imposed [sic] and the purpose of [Section] 1144-a, the Court holds that if the evidence establishes, beyond a reasonable doubt, that a reasonably prudent driver would have deemed it safe to change lanes and the defendant failed to change lanes, then the defendant violated [Section] 1144-a."). In short, we are unpersuaded by Overton's argument about the meaning of the "due care" clause in Section 1144-a(b).

Overton also contends that, even under the above-referenced "due care" standard utilized by the district court, the court erred in determining that Trooper Ahigian possessed the requisite reasonable suspicion to initiate the traffic stop of Overton based on a violation of Section 1144-a(b). We disagree. Trooper Ahigian testified that, on the evening of September 15, 2024, a tow truck "ha[d] its amber warning lights illuminated" as it prepared to tow away a vehicle parked on the right-hand shoulder of the highway. App'x at 128. He further stated that he "observed

6

[Overton's] vehicle pass by [his] location" and subsequently "pass by the tow truck in the right lane, failing to move over to the left lane." *Id*. According to Trooper Ahigian, "there was nothing in the left-hand lane that would have prevented [Overton] [from] mov[ing] over to the left-hand lane" as he passed the tow truck on the shoulder of the highway. *Id*. at 129. Based on this testimony, which the district court credited, we conclude that Trooper Ahigian possessed the requisite reasonable suspicion to conduct the traffic stop of Overton's vehicle for a violation of Section 1144-a(b).

To the extent Overton argues that reasonable suspicion was lacking because "[t]he stop of [his] car was pre-planned, and Trooper Ahigian was planning to stop [his] car even without a legal basis to do so," that argument misses the mark. Appellant's Reply Br. at 2. As the Supreme Court has explained, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren*, 517 U.S. at 807 (emphasis in original). Thus, we have emphasized that, where "an officer has observed a traffic violation, his actual motivation for stopping the vehicle is irrelevant to whether the stop is constitutionally reasonable." *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015); *see also United States v. Dhinsa*, 171 F.3d 721, 724–25 (2d Cir. 1998) ("In other words, an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."). Here, because the objective facts (as found by the district court) provided reasonable suspicion for the traffic stop based on a violation of Section 1144-a(b), any allegation that Trooper Ahigian pre-planned the stop, even in the absence of a traffic violation, is legally irrelevant to the Fourth Amendment analysis.[4]

---

[4] For the same reason, the fact that Trooper Ahigian mistakenly cited Overton for violating Section 1144-a(a) on the ticket does not undermine the reasonable suspicion that existed for a violation of Section 1144-a(b).

Finally, we find similarly unavailing Overton's contention that the district court committed clear error by crediting Trooper Ahigian's testimony. According to Overton, Trooper Ahigian's view of Overton's vehicle was obstructed by his vantage point and the darkness, thereby hindering his ability to witness Overton's alleged traffic violation. The Supreme Court has explained that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). Here, the district court explained that Overton's "depiction of Trooper Ahigian's vehicle vis-à-vis the tow truck and [Overton's] vehicle as it passed the tow truck [does not] negate, or call into question, Trooper Ahigian's testimony regarding his observations of those vehicles." Special App'x at 12. Indeed, at the evidentiary hearing, Trooper Ahigian described his position on the highway as being "parallel to the highway watching northbound traffic" in the direction that Overton was driving and not far from the location of the tow truck. App'x at 160–161. Overton has failed to identify any evidence in the record that rendered Trooper Ahigian's testimony regarding his observations incoherent or implausible, and we thus discern no basis to disturb the district court's finding that "Trooper Ahigian credibly testified about his observations of [Overton's] traffic infraction, and [Overton's] self-serving statement in his affidavit that he did not commit that traffic violation does not undermine the credibility of [Trooper] Ahigian's testimony."[5] Special App'x at 11.

In sum, because Trooper Ahigian witnessed Overton fail to change lanes from the

---

[5] Overton also argues that the information provided by two confidential informants regarding his alleged drug trafficking activity could not provide reasonable suspicion because there was insufficient information establishing their reliability. However, we need not address this argument because we affirm on the ground that reasonable suspicion existed to stop Overton's car based on the traffic infraction.

righthand lane as he passed a hazard vehicle on the shoulder, despite it being possible to do so safely, Trooper Ahigian had the necessary reasonable suspicion to stop Overton's vehicle. "[R]easonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). The district court therefore properly denied Overton's motion to suppress.

*  *  *

We have considered Overton's remaining arguments on appeal and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

    FOR THE COURT:
    Catherine O'Hagan Wolfe, Clerk of Court